UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ISMAEL JOEL SUREN, LUCIA SANTIAGO,
EDGAR JOEL SUREN AND NELSON
SANTIAGO,

                        Plaintiffs

            -against-

CITY OF NEW YORK, DETECTIVE ALLAN
WARD, [Shield # 520], DETECTIVE ALEJANDRO
VILLALONA [Shield # 101], SERGEANT PETER
WONG [Shield #: 1824], CAPTAIN BENJAMIN LEE
[Tax # 932887], DETECTIVE DANIEL MIZVESKY
[Shield # 1465], DETECTIVE SAMUEL PEREZ
[Shield # 232], P.O. NICHOLAS KOWATCH [Shield #
9969], SERGEANT BRIAN GRIBBIN [Shield # 27248]
DETECTIVE PAUL ORTIZ [Shield # 607], P.O. KRISTA
OWENS [Shield # 16661], DETECTIVE JOHN
SLAVINSKY [Shield # 29093], and JOHN DOE
AND JANE DOE

                        Defendants.
-------------------------------------------------------x

**Index No.** 19-cv-2659 (KAM)(RER)

**AMENDED COMPLAINT**

**JURY DEMAND**

Plaintiffs, by their attorney, LAW OFFICE OF PHILIP AKAKWAM, P.C., complaining

of the defendants, City of New York, Detective Allan Ward [Shield # 520], Detective Alejandro

Villalona [Shield # 101], Sergeant Peter Wong [Shield #: 1824], Captain Benjamin Lee [Tax #

932887], Detective Daniel Mizvesky [Shield # 1465], Detective Samuel Perez [Shield # 232],

P.O. Nicholas Kowatch [Shield # 9969], Sergeant Brian Gribbin [Shield # 27248], Detective

Paul Ortiz [Shield # 607], P.O. Krista Owens [Shield # 16661], Detective John Slavinsky [Shield

# 29093], and John Doe and Jane Doe, upon information and belief alleges as follows:

<u>INTRODUCTION</u>

1. This is an action at law to redress the deprivation under color of statute, ordinance,

regulation, custom, or usage of rights, privileges, and immunities secured to the plaintiffs by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], and arising under the laws and statutes of the State of New York.

2. The Plaintiffs seek monetary damages for: the false arrest, false imprisonment, malicious prosecution, and unlawful search and seizure of Plaintiffs, and for the destruction of plaintiffs' property, and otherwise, for the violation of the Plaintiffs' federally guaranteed constitutional and civil rights and their rights under the laws and constitution of the State of New York. Plaintiffs seek whatever other relief is appropriate and necessary in order to serve the interest of justice and assure that their remedy is full and complete.

## JURISDICTION

3. The jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343[3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and under the Fourth and Fourteenth Amendments to the United States Constitution.

4. Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Party Jurisdiction.

5. The Plaintiffs request that the Court invoke pendent jurisdiction over any and all claims arising under the laws and Constitution of the State of New York.

6. The State law claims have a common nucleus of operative facts with the federally based claims and they arise out of the same transaction(s) and occurrence(s) giving rise to the Plaintiffs' federally based claims and causes of action.

## PARTIES

7. Plaintiffs are residents of the City of New York, County of Kings, State of New York.

8.  Defendant City of New York is a municipal entity existing under the laws and Constitution of the State of New York and was the employer of the defendant police officers through its Police Department - New York City Police Department (NYPD) - and the actions of the police officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York.

9. Defendants Detective Allan Ward [Shield # 520], Detective Alejandro Villalona [Shield # 101], Sergeant Peter Wong [Shield #: 1824], Captain Benjamin Lee [Tax # 932887], Detective Daniel Mizvesky [Shield # 1465], Detective Samuel Perez [Shield # 232], P.O. Nicholas Kowatch [Shield # 9969], Sergeant Brian Gribbin [Shield # 27248], Detective Paul Ortiz [Shield # 607], P.O. Krista Owens [Shield # 16661], Detective John Slavinsky [Shield # 29093] were at all times material herein police officers employed by the NYPD. They are named here in their official and individual capacities.

10. Defendants John Doe and Jane Doe were at all times material herein individuals and/or officers employed by the NYPD. They are named here in their official and individual capacities.

## NOTICE OF CLAIM

11. Plaintiffs, in furtherance of their state causes of action, filed timely notice of claim against the City, in compliance with General Municipal Law Section 50.

12. At least thirty days have elapsed since the service of aforesaid notice of claim and adjustment or payment thereof has been neglected or refused.

13. This action has been commenced within one year and ninety days after the happening of the event(s) upon which the claim(s) is based.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14. On or about February 19, 2018, at approximately 7:30 p.m., defendant officers, acting in concert, arrested the plaintiffs without cause at 32 Starr Street, Brooklyn, New York, and charged plaintiffs with various crimes.

15. On the date and time aforesaid, about 14 police officers of the New York City Police Department, including defendant officers, without producing a warrant, broke into apartment 3R at 32 Starr Street, Brooklyn with guns drawn and pointed at plaintiff Lucia Santiago, her son Ismael Suren, Jr., and grandson plaintiff Edgar Joel Suren, who were present in the apartment when the officers broke into it.

16. Neither plaintiff Ismael Joel Suren nor Nelson Santiago was present in the apartment when the officers broke into the apartment, and neither of them lived in the apartment.

17. Plaintiff Edgar Joel Suren who was then 17 years old, was sitting in the living room playing video games when the defendant officers broke into the apartment.

18. Upon breaking into the apartment, the defendant officers wearing SWAT gear with flash lights and guns pointed at plaintiff Edgar Joel Suren, arrested him, placed him in handcuffs and ordered him to sit on the couch in the living room.

19. The defendant officers proceeded into the bedrooms and grabbed and pulled plaintiff Lucia Santiago (65 years old) off from her bed, handcuffed her and brought her into the living room.

20. Then the defendant officers grabbed Ismael Suren, Jr. (father of plaintiff Ismael Joel Suren) from one of the bedrooms, handcuffed him and brought him into the living room to join Lucia and Edgar who were both already in handcuffs.

21. The defendant officers asked them where they kept "the guns and drugs". They told them that they did not have any guns or drugs.

22. Then they asked plaintiff Lucia Santiago about her son Nelson Santiago. She told them that he did not live with her. The officers told her that they wanted to speak to Nelson about drugs and guns.

23. The defendant officers compelled plaintiff Lucia Santiago to call her son plaintiff Nelson Santiago and tell him that the police wanted to speak with him.

24. Plaintiff Nelson Santiago does not live in the premises and was having dinner with his girlfriend at her home when he received his mother's call that the police wanted to speak with him at his mother's house.

25. Upon receiving the call, plaintiff Nelson proceeded to his mother's residence.

26. And on getting to the building, plaintiff Nelson was arrested in front of the building by the defendant officers.

27. The defendant officers interrogated plaintiff Nelson in the hallway of the building; they asked him if he had any drugs. He told them he did not have any drugs and does not use drugs.

28. Plaintiff Nelson advised the officers that he did not live in the building but that he lived at 105 Thaford Street, Brooklyn, New York.

29. The defendant officers handcuffed and searched Nelson in the hallway of the building but found nothing illegal on him.

30. After searching plaintiff Nelson, the defendant officers brought him into the living room of his mother's apartment and had him sit there with the others - plaintiff Edgar, plaintiff

Lucia Santiago and Ismael Suren, Jr., who had been arrested.

31. Plaintiff Edgar's father Edgardo Suren got a call from one Louis Otero advising that the police were at his mother's home and that his son, mother and brothers were being held.

32. When Edgardo Suren received the call from Louis Otero, he was with his nephew plaintiff Ismael Joel Suren at Edgardo's home.

33. Upon receiving the call about his mother and son being held by the police, Edgardo drove to his mother's residence accompanied by plaintiff Ismael Joel Suren.

34. And upon arriving at his grandma's residence, plaintiff Ismael Joel Suren was arrested by the defendant officers.

35. The defendant officers asked plaintiff Ismael Joel Suren for his photo ID and when he produced it to them, they arrested him.

36. The defendant officers interrogated plaintiff Ismael Joel Suren in the hallway, asked him about guns and drugs and whether he had any stashes in the hallway. He told them he had neither guns nor drugs.

37. The defendant officers searched him in the hallway and nothing illegal was found on him.

38. They cuffed plaintiff Ismael Joel Suren and led him into the living room of the subject premises where they were already holding the other plaintiffs and arrestees.

39. The defendant officers proceeded to search the entire apartment. They tore down the apartment, breaking furniture, kitchen cabinets, bed springs, among other things.

40. Plaintiffs demanded to see any search warrant authorizing the search but the officers did not show them any warrants.

41. The defendant officers found some collector bullets (which were inoperable) in a sock inside a tool box located inside a closet that belonged to the late husband of Lucia Santiago, and father of plaintiff Nelson Santiago. Some of the bullets had holes in them.

42. The defendant officers asked about the bullets and Ms. Santiago told them that those belonged to her late husband who was a collector and that she had not cleared out his personal belongings since he died.

43. Then the defendant officers asked them about guns and plaintiffs told them they had no guns.

44. At some point while the officers were searching the bedrooms, they closed the door leading to the living room where plaintiffs and other arrestees were kept so that they could not further see what the officers were doing inside the bedroom.

45. The defendant officers opened another door leading from the bedroom to the hallway and plaintiffs could hear them going back and forth into the bedroom from the hallway.

46. Thereafter, the defendant officers claimed to have found some heroin in a jacket inside a closet in the bedroom of Lucia Santiago.

47. When the defendant officers came into the living room with a vial they claimed to contain heroin, Ismael Suren, Jr. told them that the vial was a Memory Urn containing his father's ashes, not heroin.

48. Notwithstanding the explanation by Ismael Suren, Jr., the defendant officers accused plaintiffs of being in possession of heroin.

49. Detective Ward and other defendant officers falsely stated to the plaintiffs that Ismael Suren, Jr., was involved in a gun sale on the subject premises on February 15, 2018 at about

10:30 a.m. However, on this date and time, said Ismael Suren, Jr., was at work and he told the officers as such. Upon information and belief, said Detective Ward had provided such false information to the Court in an application for a search warrant.

50. In addition to destroying many properties at the subject premises, the defendant officers took the urn and vials containing the ashes of Late Miguel Santiago - who was the husband of plaintiff Lucia Santiago and father and grandfather of the other plaintiffs. The officers have failed to return the ashes despite repeated demands by the plaintiffs and their family.

51. Throughout the duration of the incident, plaintiffs continued to ask defendant officers to produce the warrant authorizing the search of their home and the arrest of plaintiffs. The defendants failed to show any warrant to the plaintiffs or to advise them of the existence of any warrant permitting the search of their home and invasion of their privacy.

52. Then plaintiffs were marched downstairs, chained together and placed in a police vehicle. They were transported to the 83rd police precinct, were fingerprinted, photographed and thrown into cell.

53. After being detained for many hours, plaintiffs Edgar Suren and Lucia Santiago were released at about 3 a.m. the following day and were issued with Desk Appearance Tickets (DAT). They were charged with possession of ammunition and controlled substance.

54. Plaintiffs Ismael Joel Suren and Nelson Santiago were both detained at the precinct for many hours before being transported to the Central Bookings where they were further detained.

55. Plaintiffs Nelson Santiago and Ismael Joel Suren were detained for two days before they were brought before a judge and thereafter released on their own recognizance.

56. Both plaintiffs Ismael Joel Suren and Nelson Santiago were charged with possession of ammunition and controlled substance.

57. Following his arrest and criminal charges, Nelson Santiago, who works for the NYC Department of Education was compulsorily suspended from his job pending the determination of his case.

58. And with his suspension from his job, plaintiff Nelson's health benefits were also suspended. Being diabetic and insulin dependent, plaintiff Nelson was under pressure to restore his job and health benefits.

59. After numerous court appearances without much progress in the prosecution of the charges against him, plaintiff Nelson, unable to continue without health insurance from his job, needed an immediate disposition of the criminal charges in order to restore his job and health benefits. Yielding to the need to restore his health insurance, plaintiff pleaded to a disorderly conduct.

60. The charges against plaintiffs Edgar Joel Suren and Lucia Santiago were adjourned in contemplation of dismissal and were subsequently dismissed.

61. Plaintiff Ismael Joel Suren made numerous court appearances until November 26, 2018 when all the criminal charges brought against him by the defendants were dismissed.

62. Plaintiffs have demanded the return of the ashes of Late Miguel Santiago but defendants have failed to return same. Also, Lucia Santiago lost her rent money in the amount of $1600 which she had in the apartment at the time of the search.

63. The Plaintiffs suffered violations of their federally guaranteed constitutional and civil rights including rights guaranteed to them under the Fourth, and Fourteenth Amendments to the

United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

64. The actions taken against plaintiffs by the defendant Officers herein were propelled by a policy and practice of the City of New York which regards neighborhoods and apartments occupied by racial/ethnic minorities such as plaintiffs, as drug and gun-infested and which condones a pattern of unlawful searches and arrests.

65. The said policy and practice also promotes an "ends justifies the means" philosophy of combating crime, which causes Officers to rely on non-credible informants to obtain no-knock warrants to search and/or arrest individuals, particularly members of racial/ethnic minority groups such as plaintiffs, who are Hispanic, and to subject those individuals to malicious investigation, destruction of property, malicious abuse of criminal process, and to excessive force, assault and battery. The said policy and practice falls disproportionately on persons of color.

66. The policy and practice violates the rights of the Plaintiffs under federal and State law including the Fourth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

67. The actions and conduct of the Officers and the policy and practice of the City of New York are negligent and the proximate cause of damages to the Plaintiffs.

68. The Defendant Officers acted together and in concert sanctioning and ratifying and otherwise condoning the wrongful actions being taken by each of the defendant Officers in a collective manner and fashion.

69. The Plaintiffs have no other adequate remedy at law but for this action.

## AND AS FOR A FIRST CAUSE OF ACTION:
### 42 U.S.C. § 1983 - FALSE ARREST AND IMPRISONMENT

70. Plaintiffs reiterate paragraphs 1 through 69 and incorporate such by reference herein.

71. By their conduct and under color of law, defendant officers deprived plaintiffs of their constitutional right to be free from false arrest and false imprisonment.

72. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## AND AS FOR A SECOND CAUSE OF ACTION:
### 42 U.S.C. § 1983 - MALICIOUS PROSECUTION

73. Plaintiffs reiterate paragraphs 1 through 72 and incorporate such by reference herein.

74. The conduct of defendant officers, as described herein, amounted to malicious prosecution of plaintiff Ismael Joel Suren.

75. Such conduct described herein violated said plaintiff's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

76. Consequently, said plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## AND AS FOR A THIRD CAUSE OF ACTION:
### 42 U.S.C. § 1983 - UNREASONABLE SEARCH & SEIZURE

77. Plaintiffs reiterates paragraphs 1 through 76 and incorporate such by reference herein.

78. Defendant officers subjected plaintiffs to unreasonable search and seizure.

79. Such conduct described herein violated plaintiffs' rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

80. Consequently, plaintiffs have been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

### FOURTH CAUSE OF ACTION: FAILURE TO TRAIN SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - Against Defendant City of New York

81. Plaintiffs reiterate paragraphs 1 through 80 and incorporate such by reference herein.

82. Defendant City, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when there is probable cause for such arrest.

83. Defendant City, acting through the Office of the District Attorney of the County of Kings, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions,

obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

84. Defendant City, acting through the aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiffs, who are Hispanic, on the pretext that they were involved in narcotics, drugs, guns and/or other illicit activities.

85. The existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

86. For example, in *Jones v. City of New York*, 603 Fed. Appx. 13 (2d Cir. 2015), Police Officer David Rodriguez arrested the Plaintiff in that matter, Javier Jones, merely because he was allegedly informed that Mr. Jones was in the company of another individual named Frantz Machon who allegedly did display a weapon.

87. Officer Rodriguez was questioned at his deposition as to whether it is NYPD's policy to charge all members of a group with criminal possession of a weapon when only one group member is alleged to have possessed a firearm.

88. Officer Rodriguez, as the Second Circuit observed, testified that although NYPD "does not have an official policy of charging all members of a group with criminal possession of a weapon when only one group member is alleged to have possessed a firearm, [] "That is what we do.'" *Jones*, 603 Fed. Appx. At 15.

89. Officer Rodriguez did further elaborate that "It is like an accomplice to the person

with the firearm[]" and that "the normal procedure is when you have a situation like this, everyone gets charged with the firearm because we are going off on what the victim said ... if the victim said that [Machon] had a firearm, that is going to be the charge for everyone."

90. As the plaintiff in *Jones* successfully argued before the Second Circuit, Officer Rodriguez's testimony shows that he "is unaware that he does not have probable cause to arrest a mere bystander[]" which confirms the fact that "he has not been trained on this issue by the City [and NYPD]."

91. Here, as was in *Jones*, the City and NYPD have failed to train defendant officers and have failed to instill in them the fact that they lack probable cause to arrest plaintiff Ismael Joel Suren and Nelson Santiago who were neither present at nor resided in the subject premises at the time of incident, but were called by and/or at the direction of the defendant officers to come to the premises where they were then arrested. Said plaintiffs had no knowledge of, nor exercised dominion and control over, any purported contraband allegedly recovered from the premises. And said plaintiffs were never in possession of any weapons, ammunition or controlled substance.

92. The City and NYPD have failed to train defendant officers and have failed to instill in them the fact that they lack probable cause to arrest an individual such as the plaintiff Edgar Joel Suren (who was then an infant) merely because he was present in the subject premises even though nothing illegal was found on him and he had no knowledge of, nor exercised dominion and control over, any purported contraband allegedly recovered from the premises.

93. In addition to the above, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a police warrant.

94. Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

95. In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

96. Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division."

97. Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

98. Prior to his testimony, Detective Anderson and his partner provided false testimony in

court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

99. Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

100. Recently, the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

101. Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

102. In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault.

103. In addition to the named individual defendants, several officers of the NYPD assigned to the NYPD-83rd Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

104. Most of the arrests and charges made by officers assigned to the NYPD-83rd Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

105. Defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiffs' injuries as described herein.

106. The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms,

custom and usage of a right; in particular, the right to be secure in his person and property, to be free from abuse of process, the excessive use of force and the right to due process.

107. By these actions, defendants have deprived plaintiffs of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

108. As a direct and proximate result of Defendant City's policies and deliberate indifference, defendants violated plaintiffs' constitutional rights causing plaintiffs to suffer substantial damages.

**AND AS FOR A FIFTH CAUSE OF ACTION:**
**PENDENT CLAIM OF ASSAULT AND BATTERY**

109. Plaintiffs reiterate paragraphs 1 through 108 and incorporate such by reference herein.

110. By their conduct, as set forth above, defendant officers committed acts of battery against plaintiff which included grabbing and slamming him on the ground. The use of physical force against plaintiff was willful and unwarranted.

111. By reason of and as a consequence of the assault detailed above, plaintiff suffered severe and serious physical and mental injuries.

**AND AS FOR AN SIXTH CAUSE OF ACTION:**
**PENDENT CLAIMS OF FALSE ARREST AND FALSE IMPRISONMENT**

112. Plaintiffs reiterate paragraphs 1 through 111 and incorporate such by reference herein.

113. Plaintiffs were wrongfully, unlawfully and unjustifiably arrested, detained, charged with crime and deprived of their liberty against their will, and were imprisoned by defendant officers.

114. The false and unlawful arrest and imprisonment of plaintiffs was without any justification or probable cause, and was forcible and against their will.

115. All of the foregoing occurred without any fault or provocation on the part of plaintiffs.

116. At all relevant times, the defendant officers and other John Doe police officers who were responsible for the false arrest and imprisonment of plaintiffs were employees of the defendant City through the NYPD, and were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

117. As a direct and proximate result of the false arrest and imprisonment of plaintiffs as detailed above, plaintiffs sustained the damage herein before stated.

**AND AS FOR A NINTH CAUSE OF ACTION:**
**PENDENT CLAIM OF MALICIOUS PROSECUTION**

118. Plaintiffs reiterate paragraphs 1 through 117 and incorporate such by reference herein.

119. Based on the false testimony of defendants, the prosecutors initiated criminal actions against the plaintiff Ismael Joel Suren.

120. Said Plaintiff was required to, and did, appear in court on multiple occasions to defend himself from the false charges levied against him with malice by defendants.

121. Eventually, the criminal proceedings terminated in said plaintiff's favor.

122. Because of the conduct of defendants, said plaintiff was maliciously prosecuted for a lengthy period of time.

123. Consequently, said plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

**AND AS FOR A TENTH CAUSE OF ACTION:**
**PROPERTY DAMAGE AND DENIAL OF DUE PROCESS**

124.  Plaintiffs reiterate paragraphs 1 through 123 and incorporate such by reference herein.

125. Defendants seized various personal effects and properties from plaintiffs' home and have continued to deprive plaintiffs of said properties without due process. The personal effect and properties seized from plaintiffs' home include vials containing the cremation ashes of their late relative, Miguel Santiago, various video games and the sum of $1,600 in United States currency.

126. Said personal effects and properties of plaintiffs were seized by defendants on the date of the arrest and defendants have continued to deprive plaintiffs of same without due process of law in violation of the Fourth and Fifth Amendments to the United States Constitution.

127. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION:
## INTENTIONAL & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

128. Plaintiffs reiterate paragraphs 1 through 127 and incorporate such by reference herein.

129. The defendants engaged in extreme and outrageous conduct, intentionally, negligently and recklessly causing severe emotional distress to plaintiffs.

130. Plaintiffs' emotional distress have damaged their personal and professional life because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the arrest, assault and imprisonment of plaintiffs and the destruction of the remains (ashes) of plaintiffs' relative by the defendants.

131. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore alleged.

## AS AND FOR A TWELFTH CAUSE OF ACTION:
## FABRICATION OF EVIDENCE AND DENIAL OF RIGHT TO A FAIR TRIAL

132. Plaintiffs reiterate paragraphs 1 through 131 and incorporate such by reference herein.

133. Defendant officers manufactured evidence of criminality against the plaintiffs which the prosecutors relied upon to initiate criminal actions against the plaintiffs.

134. The conduct of the defendant officers, as described herein, amounted to fabrication of evidence and denial of right to a fair trial.

135. Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

136. Consequently, plaintiffs have been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

i.      For compensatory damages in an amount to be determined at trial - against all defendants, jointly and severally;

ii.     For punitive damages against the individual defendants in an amount to be determined at trial;

iii.    For reasonable attorneys' fees, together with costs and disbursements of this action, pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

iv.    For pre-judgment interest as allowed by law; and

v.     For such other and further relief as the court deems just and proper.

Dated: Brooklyn, New York
      January 7, 2020

                    LAW OFFICE OF PHILIP AKAKWAM, P.C.

                  By:          /s/
                    Philip Akakwam
                    Attorneys for the Plaintiffs
                    303 Livingston St., 2nd Floor
                    Brooklyn, N.Y. 11217
                    (718) 858-2488

Index No. 19-cv-2659

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

ISMAEL JOEL SUREN, LUCIA SANTIAGO,
EDGAR JOEL SUREN AND NELSON
SANTIAGO,

                    Plaintiff,

     -against-

CITY OF NEW YORK, DETECTIVE ALLAN
WARD, [Shield # 520], DETECTIVE ALEJANDRO
VILLALONA [Shield # 101], SERGEANT PETER
WONG [Shield #: 1824], CAPTAIN BENJAMIN LEE
[Tax # 932887], DETECTIVE DANIEL MIZVESKY
[Shield # 1465], DETECTIVE SAMUEL PEREZ
[Shield # 232], P.O. NICHOLAS KOWATCH [Shield #
9969], SERGEANT BRIAN GRIBBIN [Shield # 27248]
DETECTIVE PAUL ORTIZ [Shield # 607], P.O. KRISTA
OWENS [Shield # 16661], DETECTIVE JOHN
SLAVINSKY [Shield # 29093], and JOHN DOE
AND JANE DOE

                    Defendants.
_____

# AMENDED COMPLAINT
_____

LAW OFFICE OF PHILIP AKAKWAM, P.C.
Attorneys for Plaintiffs
Office and Post Office Address
303 Livingston Street, 2nd Floor
Brooklyn, N.Y. 11217
(718) 858-2488
_____

TO:
_____

Service of a copy of the within is hereby admitted.

Dated: