# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 19-CV-2659 (KAM) (RER)

———————————

ISMAEL JOEL SUREN, LUCIA SANTIAGO, EDGAR JOEL SUREN, AND NELSON SANTIAGO,

Plaintiffs,

VERSUS

CITY OF NEW YORK, ET AL.,

Defendants.

———————————

**REPORT & RECOMMENDATION**

August 8, 2022

———————————

**TO THE HONORABLE KIYO A. MATSUMOTO
UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

On May 6, 2019, Plaintiffs Ismael Joel Suren, Edgar Joel Suren, Lucia Santiago, and Nelson Santiago (collectively, "Plaintiffs") commenced this action against Detective Allan Ward, Detective Alejandro Villalona, Sergeant Peter Wong, Captain Benjamin Lee, Detective Daniel Mizvesky, Detective Samuel Perez, P.O. Nicholas Kowatch, Sergeant Brian Gribbin, Detective Paul Ortiz, P.O. Krista Owens, Detective John Slavinsky, and John and Jane Doe, who are officers of the New York City Police Department ("NYPD") (collectively, the "Defendant Officers") in their official and individual capacities, and the City of New York (with the Defendant Officers, the "Defendants"). (ECF No. 1 ("Compl."); ECF No. 15 ("Am. Compl.")).

1

Plaintiffs' claims arise from the NYPD's execution of a search warrant, discovery of narcotics and ammunition on the premises searched, and arrest of the Plaintiffs for possession thereof. (Am. Compl. ¶¶ 14). Plaintiffs assert claims of unreasonable search and seizure, false arrest and imprisonment, malicious prosecution, fabrication of evidence and denial of the right to a fair trial, and municipal liability under 42 U.S.C. § 1983 (Am. Compl. ¶¶ 70–108, 132–136), and separately assert a cause of action for property damage and denial of due process with respect to the property seized in the course of the search (Am. Compl. ¶¶ 124–127). Plaintiffs also assert state law claims of false arrest and imprisonment, malicious prosecution, assault and battery, and intentional and negligent infliction of emotional distress. (Am. Compl. ¶¶ 109–123, 128–131). Defendants now move, unopposed, for summary judgment on all of Plaintiffs' claims. (ECF No. 46 ("Def's Mot."); ECF No. 50 ("Def's Mem.")).

For the reasons discussed below, I respectfully recommend that Defendants' motion for summary judgment be granted in part and denied in part.

## **BACKGROUND**

I.    Facts

The following facts are taken from Defendants' Local Rule 56.1 Statement (ECF No. 49 ("Def's 56.1 Stmt.")) and from the evidence upon which that statement relies (*see* ECF No. 48 ("Shapovalova Decl.") and accompanying exhibits).

A.   The Apartment and its Occupants

On February 19, 2018, Lucia Santiago lived in Apartment 3R at 32 Starr Street in Brooklyn, New York (the "Apartment") with two of her sons, non-party Ismael Suren Jr. and Plaintiff Nelson Santiago, and with her grandson, Plaintiff Edgar Joel Suren. (ECF No. 49 ("Def's 56.1 Stmt.") ¶¶ 5–7, 26, 30, 36; *see also* ECF No. 48-11 ("L. Santiago Depo. Tr.") at 14:16–15:13, 18:5–22)).

Her other grandson, Plaintiff Ismael Joel Suren, was visiting New York at the time, had been sleeping on a sofa in the Apartment approximately three nights per week, including the night before the execution of the search warrant, and told several officers that he was staying there on the night of the search. (Def's 56.1 Stmt. ¶¶ 16–19, 21; *see also* I. Joel Suren Depo. Tr. at 20:1–14, 22:9–14). According to Defendants, both Ismael Joel Suren and Nelson Santiago listed Apartment 3R as their mailing address, and had mail addressed to them at the Apartment. (Def's 56.1 Stmt. ¶¶ 20, 32).

The Apartment is a two-bedroom "railroad style apartment," meaning that each room opens into the next in a single file. (Def's 56.1 Stmt. ¶¶ 3–4; *see also* ECF No. 48-3 ("N. Santiago Depo. Tr.") at 18:4–15; ECF No. 48-2 ("I. Joel Suren Depo. Tr.") at 19:12–20:14); ECF No. 48-4 ("E. Joel Suren Depo. Tr.") at 17:11–18:22). From the living room, a door leads into the first bedroom, which was typically occupied by Edgar Joel Suren and Nelson Santiago. (Def's 56.1 Stmt. ¶¶ 6, 30; *see also* N. Santiago Depo. Tr. at 18:16–19:7; E. Joel Suren Depo. Tr. at 18:14–19). Through an open archway, the first bedroom leads into the second bedroom, which includes Lucia Santiago's bed and two closets where Edgar Joel Suren and Nelson Santiago indicated they stored personal belongings. (Def's 56.1 Stmt. ¶¶ 3–4, 7, 26, 31; *see also* E. Joel Suren Depo. Tr. at 17:22–18:15 (describing layout of apartment); *id.* at 19:2–19 (describing that Edgar Joel Suren keeps personal belongings in the purchased closet); L. Santiago Depo. Tr. at 33:7–13 (describing two closets, a built-in and a purchased closet), 34:19–25 (noting that Edgar's clothes are kept in the purchased closet); N. Santiago Depo. Tr. at 20:1–9 (noting that Nelson Santiago stored personal belongings in the built-in closet).

B.  The Execution of the Search Warrant

On February 19, 2018, based on Defendant Ward's written and recorded testimony, the Honorable Joseph E. Gubbay of the Kings County Criminal Court found "probable cause for believing that . . . a firearm, ammunition, narcotics, narcotics paraphernalia, and documents relating to the illegal possession of a firearm, ammunition, and narcotics, and the ownership and recent occupation of the subject location" would be found at the Apartment, and authorized a "no-knock" search warrant for the Apartment, "the person of . . . Ismael Suren . . . if found on the premises, and/or any person found therein" for such property. (Search Warrant; *see also* Def's 56.1 Stmt. ¶¶ 1–2). At approximately 7:45 P.M., the Defendant Officers executed the search warrant. (Def's 56.1 Stmt. ¶ 8). During the search, Plaintiffs were seated on a couch in the living room, and the door between the living room and the bedrooms was closed. (Def's Stmt. ¶ 12).[1]

In searching the bedrooms, the Defendant Officers involved in the search recovered and vouchered six glassine envelopes containing solid material which the Defendant Officers believed to contain heroin, thirty-nine cartridges of pistol and rifle ammunition of assorted calibers, and mail addressed to Plaintiffs Ismael Joel Suren and Nelson Santiago. (*See* Def's 56.1 Stmt. ¶¶ 9–11, 14; ECF No. 48-9 ("Controlled Substance Invoice") (vouchering six glassine packages of "alleged heroin" as arrest evidence); ECF No. 48-10 ("Ammunition Invoice") (vouchering thirty-

---

[1] Plaintiffs allege that "neither plaintiff Ismael Joel Suren nor Nelson Santiago was present . . . when the officers broke into the apartment." (Am. Compl. ¶ 16). Rather, the officers allegedly compelled Lucia Santiago to call her son Nelson Santiago to the premises after the search had begun, and arrested, interrogated, and searched him once he arrived. (Am. Compl. ¶¶ 22–29). Similarly, Plaintiffs allege Ismael Joel Suren arrived at his grandmother's house after the officers began their search, and was arrested, interrogated, and searched upon his arrival after identifying himself to the police. (Am. Compl. ¶¶ 33–37). Plaintiffs allege that both men were led into the living room to join their detained family members after they arrived. (Am. Compl. ¶¶ 30, 38). Defendants' Local Rule 56.1 Statement is silent on the circumstances and timing of Nelson Santiago's arrival, but acknowledges that Ismael Joel Suren arrived after the search began by noting that "while the warrant was being executed, plaintiff Ismael Joel Suren informed several NYPD officers who were in front of the building at 32 Starr Street that he was staying at the location." (Def's 56.1 Stmt. ¶ 21; *see also* L. Santiago Depo. Tr. at 32:5–13) (describing that "the difference between when Ismael Joel came into the apartment and Nelson it's a matter of minutes" and answering "what happened after Ismael Joel came to the apartment?").

nine cartridges); ECF No. 48-12 ("Mail Invoice") (vouchering envelopes addressed to Nelson Santiago, Ismael Suren, and Ismael Suren Jr.); *see also* ECF No. 48-16 ("I. Joel Suren & N. Santiago Crim. Compl.") ("Deponent [Allan Ward] recovered a quantity of heroin from a closed dresser drawer, and deponent recovered a quantity of heroin and said ammunition on top of a second dresser in a bedroom where defendants sleep."); ECF No. 48-19 ("E. Joel Suren Crim. Compl.") ("Deponent [Allan Ward] recovered a quantity of heroin from a closed dresser drawer, and deponent recovered a quantity of heroin and said ammunition on top of a second dresser in a bedroom where defendant sleeps"); ECF No. 48-24 ("L. Santiago Crim. Compl.") (same).

With respect to the vouchered ammunition, Defendants state that the "Plaintiffs were aware that, at the time of the search warrant, there were bullets inside of the apartment." (Def's 56.1 Stmt. ¶ 13 (citing E. Joel Suren Depo. Tr. at 45:1–12; L. Santiago Depo. Tr. at 32:16–33:6)). The record indicates that upon questioning by the Defendant Officers during the search, the Plaintiffs told police that the bullets belonged to Lucia Santiago's late husband, Miguel Santiago. (E. Joel Suren Depo. Tr. at 45:1–12). Lucia Santiago testified that she was aware that the bullets were in the Apartment. (L. Santiago. Depo. Tr. at 32:16–24). However, there is no evidence in the record to suggest that Plaintiffs Nelson Santiago, Edgar Joel Suren, or Ismael Joel Suren were aware of the bullets or their location inside the Apartment before the police discovered them. Indeed, Ismael Joel Suren's testimony affirmatively indicates that he did not know where the bullets were kept (I. Joel Suren Depo. Tr. at 47:22–48:19), and Edgar Joel Suren's testimony indicates that he believed the bullets were found in a metal box under the living room sofa, rather than in a bedroom closet. (E. Joel Suren Depo. Tr. at 45:13–24). Nelson Santiago's proffered testimony is completely silent with respect to his knowledge of the bullets or their location in the Apartment. (*See Generally* N. Santiago Depo. Tr.).

With respect to the vouchered heroin found at the Apartment, the record reflects that when Lucia Santiago was informed that heroin was found among her grandson Edgar's clothes in her bedroom closet, she told the Defendant Officers that she knew her son, Ismael Suren Jr., used drugs. (Def's 56.1 Stmt. ¶ 37; L. Santiago Depo. Tr. at 34:10–25, 36:20–37:7). Beyond the arrest reports charging them with possession of heroin, the record contains no evidence indicating that Ismael Joel Suren, Edgar Joel Suren, or Nelson Santiago were aware that drugs were found on the premises. (I. Joel Suren Depo. Tr. at 47:22–48:24 (acknowledging that bullets belonging to his grandfather were found in the Apartment, but explaining that he did not know where those bullets were kept inside the apartment, and indicating he was unaware of anything else that the Defendant Officers found during the search); E. Joel Suren Depo. Tr. at 45:1–24 (acknowledging that bullets were found in the living room of the Apartment, but otherwise silent on the presence of drugs or heroin in the Apartment). *See Generally* N. Santiago Depo. Tr. (containing no discussion regarding the fruits of the Defendant Officers' search)).

With respect to the vouchered mail, Defendants state that Ismael Joel Suren "listed Apartment 3R as his mailing address and had mail addressed to him" there. (Def's 56.1 Stmt. ¶ 20 (citing N. Santiago Depo. Tr. at 49:12–15 ("Q: So to confirm, back in February of 2018, was your nephew, Ismael Joel Suren, getting mail at 32 Starr Street, as far as you know? A: As far as I know, yes.")); L. Santiago Depo. Tr. at 20:12–22 (noting Ismael Joel Suren was still getting mail at the Apartment in February of 2018). However, the record contains additional conflicting evidence regarding Ismael Joel Suren's receipt of mail at that time. (N. Santiago Depo Tr. at 49:9–11 ("I believe my brother gets mail at my mother's address. As far as my nephew [Ismael Joel Suren], at the moment, at that time, no.")). Further, the invoice describing mail recovered at the Apartment lists "Ismael

Suren" and "Ismael Suren Jr." as the addressee, but does not specifically identify "Ismael Joel Suren" as the intended recipient. (Mail Invoice).

C. Post Arrest Criminal Proceedings

After discovering the ammunition and heroin in the Apartment, Detective Ward arrested each Plaintiff for Criminal Possession of a Controlled Substance in the Seventh Degree and for violation of local laws for possession of a quantity of ammunition. (Def's 56.1 Stmt. ¶¶ 22, 27, 33, 38; *see also* ECF Nos. 48-5–48-8 (collectively, "Arrest Reports")).[2] Plaintiffs Lucia Santiago and Edgar Joel Suren were brought to the precinct, issued Desk Appearance Tickets, and were released. (Def's 56.1 Stmt. ¶¶ 27, 38; *see also* ECF No. 48-18 ("E. Joel Suren DAT"); ECF No. 48-23 ("L. Santiago DAT")). Plaintiffs Ismael Joel Suren and Nelson Santiago were also brought to the precinct, but were subsequently transported to central booking and held in custody for just over a day pending arraignment. (Def's 56.1 Stmt. ¶ 33; ECF No. 48-15 ("I. Suren Online Prisoner Arraignment Form"); ECF No. 48-21 ("N. Santiago Online Prisoner Arraignment Form")).

On February 20, 2018, Defendant Detective Allan Ward signed the criminal complaints against each Plaintiff, including sworn testimony that he (1) recovered ammunition and a substance that he believed to be heroin based on his professional training from "a bedroom where [each Plaintiff sleeps]," (2) that he was informed by each Plaintiffs' "own statement, in sum and substance, that [each Plaintiff] sleeps in the above mentioned bedroom and lives in the above mentioned location," and (3) with respect to Ismael Joel Suren and Nelson Santiago, that he "recovered mail bearing

---

[2] The NYPD subsequently analyzed the vouchered ammunition and determined that the cartridges recovered during the search were operable. (Def's 56.1 Stmt. ¶ 15; ECF No. 48-10 ("NYPD Ammunition Lab Report").The NYPD also analyzed one of the six vouchered glassine envelopes and determined that it contained heroin; the remaining five glassine envelopes were not analyzed. (Def's 56.1 Stmt. ¶ 14; ECF No. 48-13 ("NYPD Controlled Substance Lab Report").

[each Plaintiffs'] name and the address of the [Apartment] on it." (*See* L. Santiago Crim. Compl.; E. Joel Suren Crim. Compl.; I. Joel Suren & N. Santiago Crim. Compl.).

Following her release, Lucia Santiago was arraigned on charges of Criminal Possession of a Controlled Substance in the Seventh Degree, N.Y. Penal Code § 220.03[3] Possession of Pistol Ammunition, N.Y.C. Admin. Code § 10-131(i)(3)[4] and Possession of Rifle Ammunition, N.Y.C. Admin. Code § 10-131(i)(5),[5] accepted an adjournment in contemplation of dismissal on March 23, 2018, and the charges were subsequently dismissed. (Def's 56.1 Stmt. ¶¶ 39–40; L. Santiago Crim. Compl.; ECF No. 48-25 ("L. Santiago Cert. of Disp.")). Edgar Joel Suren was arraigned on the same charges on March 23, 2018, accepted an adjournment in contemplation of dismissal on May 14, 2018, and the charges were subsequently dismissed. (E. Joel Suren Crim. Compl.; ECF No. 48-20 ("E. Joel Suren Cert. of Disp.").

Ismael Joel Suren and Nelson Santiago were arraigned on the same charges on February 21, 2018, and were subsequently released on their own recognizance. (Def's 56.1 Stmt. ¶¶ 23, 34; I. Joel Suren & N. Santiago Crim. Compl.; I. Suren Online Prisoner Arraignment Form; N. Santiago Online Prisoner Arraignment Form). Nelson Santiago ultimately pled guilty to disorderly conduct on May 30, 2018. (Def's 56.1 Stmt. ¶ 35; ECF No. 48-22 ("N. Santiago Cert. of Disp.")). Prosecutors dismissed the criminal case against Ismael Joel Suren on November 26, 2018. (Def's 56.1 Stmt. ¶ 24; ECF No. 48-17 ("I. Joel Suren Cert. of Disp.")).

---

[3] Subject to certain exceptions not relevant here, "[a] person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance." N.Y. Penal Law § 220.03.

[4] "It shall be unlawful for any person not authorized to possess a pistol or revolver within the city of New York to possess pistol or revolver ammunition, provided that a dealer in rifles and shotguns may possess such ammunition." New York City Admin. Code § 10-131(i)(3).

[5] "Notwithstanding the provisions of paragraphs two, three and four of this subdivision, any person authorized to possess a rifle within the city of New York may possess ammunition suitable for use in such rifle[.]" New York City Admin. Code § 10-131(i)(5).

II.  <u>Procedural History</u>

Plaintiffs commenced this action against the City of New York, Detective Allan Ward, and fifteen unnamed John and Jane Doe Defendants on May 6, 2019, alleging constitutional violations and state law causes of action arising out of the search and the arrests. (Compl.). On January 8, 2020, Plaintiffs filed an Amended Complaint which alleged the same causes of action but replaced certain John and Jane Doe Defendants with named police officers. (Am. Compl.). Throughout these early stages of this case, Plaintiffs were represented by counsel; however, in September 2020, Plaintiffs' attorney reported that Plaintiffs terminated his representation and sought leave to withdraw. (ECF No. 34). At a telephone conference on October 6, 2020, the Court granted the attorney's request, and directed Plaintiffs to find substitute counsel by October 30, 2020 or proceed *pro se*. (Minute Entry dated 10/06/2020).

After substitute counsel did not appear, the Court directed Plaintiffs to proceed *pro se* and directed the parties to comply with a discovery schedule, warning that there would be no extensions. (Order dated 11/30/2020). Plaintiffs failed to appear at subsequent conferences before the Court, and according to Defendants' counsel submitted no further requests for discovery and conducted no depositions after dismissing their attorney. (Minute Entry dated 02/17/2021; Minute Entry dated 08/11/2021). Following the scheduled close of discovery, the parties appeared at a settlement conference before the Court, but settlement discussions proved unfruitful. (Minute Entry dated 08/31/2021).

On January 10, 2022, Defendants filed the instant motion for summary judgment under Federal Rule of Civil Procedure 56. (ECF No. 46). Defendants timely served Plaintiffs with notice of the motion, a memorandum of law, supporting exhibits, and a notice to the *pro se* parties required by Local Civil Rule 56.2. (ECF Nos. 45–50). Despite the Court's order setting a briefing schedule for the motion (Order dated 10/21/2021), Plaintiffs have not filed an opposition or otherwise

9

responded to Defendants' motion, nor have they sought leave for an extension of time to do so. Accordingly, the Court is able to consider only Defendants' submissions to determine whether the motion should be granted. *Martinez v. DeMarco*, No. 13-CV-1319 (KAM) (SMG), 2020 WL 2571978, at *2 (E.D.N.Y. May 21, 2020) (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)).

## LEGAL STANDARDS

I.    Unopposed Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Scoma v. City of New York*, No. 16-CV-6693 (KAM) (SJB), 2021 WL 230295, at *5 (E.D.N.Y. Jan. 22, 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), *adopted by*, 2021 WL 1784385 (May 4, 2021). "In reviewing a motion for summary judgment, we construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (citing *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005)).

At the summary judgment stage, "the moving party bears the initial burden of establishing that there are no genuine issues of material fact[;] once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson*, 477 U.S. at 256). Further, while "the Court must 'liberally construe pleadings and briefs submitted by *pro se* litigants, reading such

submissions to raise the strongest arguments they suggest.' . . . a *pro se* plaintiff cannot simply rely on the allegations in his complaint to withstand summary judgment." *Pierre v. Air Serv Sec.*, No. 14-CV-5915 (MKB) (ST), 2016 WL 11396816, at *4–5 (E.D.N.Y. July 28, 2016) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)), *adopted by*, 2016 WL 5136256 (E.D.N.Y. Sept. 21, 2016)); *see also Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (per curiam) ("Fed. R. Civ. P. 56(e) expressly provides that a plaintiff opposing summary judgment may not rely on his complaint to defeat the motion."). Although a plaintiff may not rely on his or her allegations alone, "a § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact." *Bellamy v. City of New York*, 614 F.3d 727, 746 (2d Cir. 2019) (citing *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016)).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Bauman for Est. of Papazissis v. City of New York*, No. 15-CV-5695 (NG) (RLM), 2022 WL 900641, at *3 (E.D.N.Y. Mar. 28, 2022) (quoting *Vt. Teddy Bear*, 373 F.3d at 242); *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) ("Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed."). Instead, where "a non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" *Vt. Teddy Bear*, 373 F.3d at 244 (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)). If the movant's proffered evidence is insufficient to satisfy its burden of production, "summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.* (quoting *Amaker*, 274 F.3d at 681). "An unopposed

summary judgment motion may also fail where the undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.'" *Id*. (quoting *Artuz,* 76 F.3d at 486)).

In determining whether the movant has met its burden on summary judgment, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003); *see also Lue v. JPMorgan Chase & Co.,* 768 Fed. App'x 7, 10 (2d Cir. 2019) ("Where a motion for summary judgment is unopposed, summary judgment is proper only if the court is satisfied that the moving party has met its burden with sufficient support in the record evidence."); *Carbone v. County of Suffolk*, No. 10-CV-3631 (SJF) (AKT), 2013 WL 1386251, at *5 (E.D.N.Y. Apr. 2, 2013) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)) ("Allegations cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement."). In making this determination, "the court may rely on other evidence in the record even if uncited." *Fed. Exp.*, 766 F.3d at 194 (citing Fed. R. Civ. P. 56(c)(3)). "However, 'while the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.'" *Carbone v. Cnty. of Suffolk*, No. CV-10-3631 (SJF) (AKT), 2013 WL 1386251, at *5 (E.D.N.Y. Apr. 2, 2013) (quoting *Monahan v. New York City Department of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)).

II.    Summary Judgment Premised on Failure to State a Claim

Where appropriate, a trial court may dismiss a plaintiff's claims "for failure to state a cause of action upon motion for summary judgment." *Shabazz v. City of New York*, No. 15-CV-1324 (RPK) (RML), 2021 WL 633748, at *2 (E.D.N.Y. Feb. 17, 2021) (quoting *Schwartz v. Compagnie Gen.*

*Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); citing *Myers v. Moore*, 326 F.R.D. 50, 58–59 (S.D.N.Y. 2018); *Risco v. McHugh*, 868 F. Supp. 2d 75, 106 n.45 (S.D.N.Y. 2012)). "Moreover, 'a court may convert a motion for summary judgment into a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim without notice to either party[.]'" *Myers*, 326 F.R.D at 58 (quoting *Scafe v. Pataki*, No. 06-CV-6051 (ARR), 2009 WL 2707317, at *6 (E.D.N.Y. Aug. 26, 2009)). "Where, as here, defendants argue that they are entitled to summary judgment because a claim is insufficiently pled, courts evaluate the [claim] under the Rule 12(b)(6) standard." *Id.* at 59; *see also Gray v. Metro. Det. Ctr.*, No. 09-CV-4520 (KAM) (LB), 2011 WL 2847430, at *5 (E.D.N.Y. July 15, 2011) ("Although defendants do not explicitly move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), they do argue with respect to [certain] claims . . . that such claims were not sufficiently stated. Accordingly, the court looks at defendants' motion under both Rule 56 and Rule 12(b)(6). To the extent that a defendant's motion for summary judgment under Rule 56 is based entirely on the plaintiff's complaint, a court may treat the motion as a motion to dismiss for failure to state a claim under Rule 12(b)(6).") (citing *Wade v. Tiffin Motorhomes, Inc.*, 686 F.Supp.2d 174, 181 (N.D.N.Y. 2009)).

Under that standard, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a motion to dismiss, a court "must accept as true all well-pleaded facts alleged in the [complaint] and must draw all reasonable inferences in the non-moving party's favor." *Magnacoustics, Inc. v. Integrated Computer Sols., Inc.*, No. 17-CV-4967 (RER), 2020 WL

4041310, at *3 (E.D.N.Y. July 17, 2020) (original alterations omitted) (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 505 (S.D.N.Y. 2013)). While legal conclusions "can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

I. <u>Section 1983 Claims</u>

"Section 1983 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.'" *Martinez v. DeMarco*, No. 13-CV-1319 (KAM) (SMG), 2020 WL 2571978, at *2 (E.D.N.Y. May 21, 2020) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, Section 1983 allows individuals to "bring a private cause of action against persons 'acting under color of state law' to recover money damages for deprivations of their federal or constitutional rights." *Thomas v. City of New York*, No. 14-CV-7513 (ENV) (VMS), 2018 WL 4328825, at *7 (E.D.N.Y. Aug. 10, 2018) (citing *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014); 42 U.S.C. § 1983), *adopted by*, 2019 WL 3491486 (E.D.N.Y. July 31, 2019).

"To establish a viable Section 1983 claim, a plaintiff must show 'the violation of a right secured by the Constitution and laws of the United States' and that 'the alleged deprivation was committed by a person acting under color of state law.'" *Id.* (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015)). Further, to establish a Section 1983 claim, a plaintiff "must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation." *Bell v. NYC,* No. 18-CV-1081 (BMC), 2018 WL 1054378, at *1 (E.D.N.Y. Feb. 23, 2018) (citing *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010)); *Brandon v. Kinter*, 938 F.3d 21, 36 (2d Cir. 2019) ("It is well-settled in this Circuit that personal involvement

of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal citations and quotation marks omitted).

Plaintiffs allege that the Defendant Officers, acting under color of law, violated their rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and assert the following claims pursuant to Section 1983: (1) unreasonable search and seizure; (2) false arrest and imprisonment; (3) malicious prosecution; (4) fabrication of evidence and denial of the right to a fair trial; (5) property damage and denial of due process; and (6) municipal liability. (Am. Compl. ¶¶ 70–108, 124–127, 132–136).

A. Unreasonable Search and Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Plaintiffs' Amended Complaint alleges that the "Defendant officers subjected plaintiffs to unreasonable search and seizure" (Am. Compl. ¶¶ 78), without articulating those aspects of the search and seizure that were allegedly unreasonable. Nevertheless, construed liberally, the Amended Complaint alleges facts indicating that Plaintiffs' "unreasonable search and seizure" claim could be based on three legal theories: the validity of the search warrant, the detention of individuals who were not identified by the warrant and who were on the premises when the search was initiated, and the unduly destructive nature of the search.

1. Validity of Warrant

To be valid under the Fourth Amendment, a search warrant must (1) be based on probable cause, (2) be supported by oath or affirmation, (3) describe with particularity the place to be

searched, and (4) describe with particularity the things to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (citing U.S. Const. amend. IV). As Defendants note, these requirements are satisfied here. (Def's Mem. at 6–7). The record shows that the Defendant Officers demonstrated probable cause and obtained a search warrant for firearms, narcotics, ammunition, and other property at the Apartment, and on the person of any individuals found within the Apartment during the search. (*See* Search Warrant; Def's 56.1 Stmt. ¶¶ 1–2). Both the search warrant and the affidavit supporting the warrant are presumptively valid, and the warrant-based search is presumptively reasonable. *See, e.g.*, *United States v. Murtaugh*, 382 Fed. App'x 83, 85 (2d Cir. 2010) ("Warrant-based searches are presumptively reasonable.") (citing *Golino v. New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)); *Walczk v. Rio*, 496 F.3d 139, 155 (2d Cir. 2007) ("Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause.") (citing *United States v. Leon*, 468 U.S. 897, 913–14 (1984); *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003); *Golino*, 950 F.2d at 870); *see also Rivera v. Myers*, No. 11-CV-2064 (BMC), 2012 WL 1078187, at *2 (E.D.N.Y. Mar. 30, 2012) (noting that search warrant and corresponding affidavit are presumptively valid).

Plaintiffs allege "upon information and belief" that "Detective Ward had provided . . . false information [regarding Ismael Suren Jr.'s involvement in a gun sale on the premises] to the Court in an application for a search warrant." (Am. Compl. ¶ 49). To the extent Plaintiffs' unreasonable search and seizure claim is a challenge to the validity of the search warrant, however, that allegation alone is insufficient at the summary judgment stage, *see Pierre*, 2016 WL 11396816, at *4–5, and in any event would be insufficient to rebut the strong presumption of the warrant's validity. *See, e.g.*, *Daniels v. City of New York*, No. 16-CV-190 (PKC)(JO), 2018 WL 4119191, at

*6 (E.D.N.Y. Aug. 29, 2018) ("[A] plaintiff must make a 'substantial preliminary showing' that '(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause or necessity finding,'" (first quoting *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991), then quoting *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013)); *Smith v. City of New York*, No. 04 Civ. 3286 (TPG), 2010 WL 3397683, at *12 (S.D.N.Y. Aug. 27, 2010), *aff'd sub nom. Smith v. Tobon*, 529 Fed. App'x 36 (2d Cir. 2013) ("A plaintiff challenging the validity of a search warrant faces a heavy burden[.]").

As Plaintiffs have not adduced sufficient evidence to establish a "substantial preliminary showing" that the issuing judge's probable cause determination was based on alleged falsehoods, and have not adduced any evidence to rebut the presumption of the warrant's validity, "[t]he existence of a valid search warrant necessitates dismissal of plaintiff's claims of unlawful search as a matter of law" to the extent such claims are premised on the invalidity of the warrant. *Rivera*, 2012 WL 1078187, at *2 (E.D.N.Y. Mar. 30, 2012) (quoting *Askins v. City of New York*, No. 09 Civ. 10315, 2011 WL 1334838, at *2 (S.D.N.Y. Mar. 25, 2011)).

## 2. Detention of Individuals Not Identified in Warrant

Plaintiffs also appear to present an unreasonable search and seizure claim premised on the detention of individuals present at the subject premises who were not named in the warrant and arrived at the premises after the Defendant Officers had already begun their search. (*See* Am. Compl. ¶¶ 91–92 (alleging that police had no "probable cause to arrest plaintiff Ismael Joel Suren and Nelson Santiago who were neither present at nor resided in the subject premises at the time of the incident, but were called by and/or at the direction of the defendant officers to come to the premises where they were then arrested" and had no "probable cause to arrest an individual such

as the plaintiff Edgar Joel Suren (who was then an infant) merely because he was present in the subject premises[.]")).

It is well established that "[o]fficers executing a search warrant for contraband have the authority to detain the occupants of the premises while a proper search is conducted," which includes "the authority to use reasonable force to effectuate the detention." *Jackson*, 87 F. Supp. 3d at 401 (quoting *Muehler v. Mena*, 544 U.S. 93, 98 (2005)); *see also Michigan v. Summers*, 452 U.S. 692, 705 (1981) ("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."); *Rivera v. United States,* 928 F.2d 592, 606 (2d Cir. 1991) ("Absent special circumstances, the police . . . have the authority to detain occupants of premises while an authorized search is in progress, regardless of individualized suspicion.").

To balance law enforcement officers' interests in safety, efficiency, flight prevention and evidence preservation when executing a search against the liberty interests of the individuals detained, the authority to detain occupants incident to the execution of a search warrant is limited to those in "the immediate vicinity of the premises to be searched." *Bailey v. United States*, 568 U.S. 186, 200–01 (2013). Courts consider a variety of factors in assessing whether an occupant was detained within the "immediate vicinity of the premises to be searched, including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." *Id.* at 201. *see also Cabral v. City of New York, No.* 12 CIV. 4659 LGS, 2014 WL 4636433, at *4 (S.D.N.Y. Sept. 17, 2014) (finding detention incident to search unjustified where "nothing in the record suggests . . . Plaintiff was an occupant of the searched apartment at any relevant time, had any intention of entering it or otherwise had any connection to it," and where "Plaintiff was inside a vehicle that was 'around the

block' from the apartment . . . not within the line of sight, and access to the apartment presumably would have required passage through at least one if not two doors.") *adhered to*, 2015 WL 4750675 (S.D.N.Y. Aug. 11, 2015), *aff'd*, 662 Fed. App'x 11 (2d Cir. 2016); *cf. Thomas*, 2019 WL 3491486 at \*5 (finding detention incident to search proper where plaintiffs were found just outside the entrance to the premises when the police arrived and were found along the route between the first-floor and basement apartments covered by the search warrant).

While the *Bailey* Court emphasized that authority to detain incident to a search applies to occupants who "are present *when* and *where* the search is being conducted," *Bailey*, 568 U.S. at 197 (emphasis added); *see also id.* at 193 ("In *Summers* and later cases the occupants detained were found *within or immediately outside* a residence *at the moment* the police officers executed the search warrant.") (emphasis added); *United States v. Brodie*, 742 F.3d 1058, 1062 (D.C. Cir. 2014) (same), the Court also recognized that "it is likely, indeed almost inevitable in the case of a resident, that an occupant will return to the premises at some point; and this might occur when the officers are still conducting the search." *Bailey*, 568 U.S. at 195. In such a case, the Court noted that police can apprehend and detain the returning occupant when they arrive at the premises being searched. *Id.* at 196.

Although the search warrant here specifically named "Ismael Suren" as the individual suspected of criminal activity, the warrant also authorized the search of other persons found at the premises upon the execution of the warrant. (Search Warrant). Accordingly, even absent the detention incident to search doctrine as described in *Summers*, *Bailey*, and other cases, the Defendant Officers were authorized to detain and search other individuals found in the Apartment. Further, under *Bailey*, the Defendant Officers unquestionably had authority to detain Plaintiffs

Lucia Santiago and Edgar Joel Suren, who were current occupants of the apartment at the time that the warrant was executed.

With respect to Plaintiffs Nelson Santiago and Ismael Joel Suren, however, Plaintiffs argue that neither individual "was present . . . when the officers broke into the apartment." (Am. Compl. ¶ 16). Rather, the officers allegedly compelled Lucia Santiago to call her son Nelson Santiago to the premises after they began their search, and arrested, interrogated, and searched his person upon his arrival. (Am. Compl. ¶ 22–29). Similarly, Ismael Joel Suren allegedly arrived at the apartment after the Defendant Officers began their search, and was arrested, interrogated, and searched upon his arrival. (Am. Compl. ¶¶ 33–37). Defendants' Local Rule 56.1 Statement states only that "[d]uring the execution of the search warrant, plaintiffs were sitting on a couch in the living room," (Def's 56.1 Stmt. ¶ 12), but is silent on the timing of Nelson Santiago's arrival. The Local 56.1 Statement acknowledges, and the record supports, that Ismael Joel Suren arrived "while the warrant was being executed," and "informed several NYPD officers who were in front of the building at 32 Starr Street that he was staying at the location" (Def's 56.1 Stmt. ¶ 21; *see also* I. Joel Suren Depo. Tr. at 28:12–19 (describing "a lot of police officers in front of the building, cop cars scattered everywhere" and subsequent arrest upon arrival at the building; L. Santiago Depo. Tr. at 32:5–13) (describing that "the difference between when Ismael Joel came into the apartment and Nelson it's a matter of minutes").

Regardless of the timing and circumstances of their return to the Apartment, however, the Defendant Officers were entitled under *Summers* and *Bailey* to detain both Nelson Santiago and Ismael Joel Suren upon their undisputed return to the premises during the search. *See Bailey*, 458 U.S. at 195–96 (noting officers may apprehend and detain an occupant who returns to the premises while the police are conducting a search). Any issues of fact regarding the circumstances of their

20

return to the premises that remain in dispute are therefore not material to this claim. Thus, since the detention of each Plaintiff incident to the search was justified, Defendants are entitled to judgment as a matter of law to the extent Plaintiffs' unreasonable search and seizure claim is premised on such a theory.

### 3. Unduly Destructive Search

Finally, Plaintiffs' unreasonable search and seizure claim may be based on a theory that the search was unduly destructive. According to the Amended Complaint, the Defendant Officers "broke into" and "tore down the apartment, breaking furniture, kitchen cabinets, bed springs, among other things," and "destroy[ed] many properties at the subject premises" in executing the warrant. (Am. Compl. ¶ 15, 39, 50).

Courts in this District recognize that "searches for contraband generally are comprehensive and may necessarily entail some property destruction to find hidden contraband," and that "'some property damage caused during a lawful search is not *per se* unreasonable within the meaning of the Fourth Amendment.'" *Jackson ex rel. Jackson v. Suffolk Cnty.*, 87 F. Supp. 3d 386, 401–02 (E.D.N.Y. 2015) (quoting *Koller v. Hilderbrand*, 933 F. Supp. 2d 272, 278 (D. Conn. 2013)); *see also Daniels*, 2018 WL 4119191, at *7 (internal quotation marks and citations omitted) ("It is well recognized that officers executing search warrants on occasion must damage property in order to perform their duty."); *Dockery v. Tucker*, No. 97-CV-3584 (ARR) (RLM), 2008 WL 2673307, at *10 (E.D.N.Y. June 26, 2008) ("[I]t is settled that some disarray in conducting a search, including the tangential destruction of items that could not contain the object of the search, does not state a claim of constitutional magnitude."). However, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself

is lawful[.]" *Jackson*, 87 F. Supp. 3d at 401 (quoting *Ochoa v. City of W. Haven*, No. 3:08–cv–00024(DJS), 2011 WL 3267705, at *6 (D. Conn. July 29, 2011)).

"To prevail on a claim for excessive or unnecessary destruction of property, Plaintiffs must establish that Defendants acted unreasonably or maliciously in bringing about the damage." *Daniels*, 2018 WL 4119191, at *7 (citing *Cody v. Mello*, 59 F.3d 13, 16 (2d Cir. 1995); *Vaher v. Town of Orangetown*, N.Y., 133 F. Supp. 3d 574, 592 (S.D.N.Y. 2015)). Such a determination "is ordinarily not amenable to resolution at the summary judgment stage," but "where a 'plaintiff has not produced any documentary evidence to support his allegations' such as photos of broken property, receipts documenting repairs, or sworn testimony attesting to specific damages, he fails to meet his burden to 'set out specific facts showing a genuine issue for trial' and thus cannot survive a summary judgment motion." *Vaher*, 133 F. Supp. 3d 574, 592 (S.D.N.Y. 2015) (quoting *Smith*, 2010 WL 3397683 at *13; Fed. R. Civ. P. 56(e)). *Cf. Daniels*, 2018 WL 4119191, at *7 (finding genuine dispute of material fact precluding summary judgment where plaintiff documented and explained alleged damage to the apartment and plaintiffs' belongings).

Here, Plaintiffs have not presented any evidence regarding the destruction of property beyond those allegations described in the Amended Complaint. *See Vaher*, 133 F. Supp. 3d at 592 (collecting cases and noting that "Plaintiff cannot rest solely on . . . allegations [of the Amended Complaint] to establish a genuine issue of material fact" regarding destruction of property incident to search). However, Defendants' 56.1 Statement and memorandum of law are also silent on the extent to which the NYPD destroyed property in executing the search and fail to address Plaintiffs' allegations. Indeed, the materials that Defendants provide in support of their motion provide some evidence beyond the allegations of the Amended Complaint that property was destroyed in the course of the search (*see* I. Joel Suren Depo. Tr. at 46:23–47:5) ("Q: Okay. So what you described

earlier, you said that you saw things in disarray. Did you ever see the police officers actually searching anything? A: I can't – can't say I seen, like, physically, but *I know what they were doing, because nobody else in my house is gonna destroy a place*, you know, you live at and do the things that were done there. You know what I'm saying?") (emphasis added)), and indicate that photographs were, in fact, taken of the premises following the search (*see* I. Joel Suren Depo. Tr. at 70:21–25 ("Mr. Suren, I'd like to speak to you a little bit more about the photographs that you said Edgardo Suren showed you that he took of the apartment after the search. Can you please tell me, how many photographs were there?"), but the excerpts Defendant provides do not contain sufficient information to make a conclusive determination on the issue.

Because Defendants are silent on the issue, and because the record submitted by Defendants raises questions regarding the extent of the property destruction incident to the search, Defendants have failed to meet their initial burden to establish that there are no genuine issues of material fact with respect to the claim. Accordingly, I respectfully recommend that Your Honor deny the motion for summary judgment with respect to Plaintiffs' unreasonable search and seizure claim premised on this theory.

B. <u>False Arrest and Imprisonment</u>[6]

Courts evaluate claims for false arrest or false imprisonment brought pursuant to Section 1983 using "the law of the state in which the arrest occurred." *Jaegly v. Couch*, 439 F.3d 149, 151–52 (2d Cir. 2006) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004); *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 18 (E.D.N.Y. 2013) (citing *Singer v. Fulton Cnty*

---

[6] Plaintiffs allege claims for false arrest and imprisonment arising under both Section 1983 and under New York law. (Am. Compl. ¶¶ 70–72, 112–117). Since "Section 1983 false arrest claims . . . are substantially the same as false arrest claims under New York law," courts typically consider them together. *Jacobs v. Aiken*, No. 16-CV-1242 (GRB) (JMW), 2021 WL 4443942, at *5 (E.D.N.Y. Aug. 31, 2021), (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Genovese v. Town of Southhampton*, 921 F. Supp. 2d 8, 18 (E.D.N.Y. 2013)), *adopted by,* 2021 WL 4443937 (Sept. 28, 2021).

*Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("In New York, the claim colloquially known as 'false arrest' is a variant of the tort of false imprisonment, and courts use that tort to analyze an alleged Fourth Amendment violation in the Section 1983 context.")); *Greene v. City of New York,* No. 15-CV-6436 (NGG) (CLP), 2019 WL 3606739, at *10 (E.D.N.Y. Aug. 6, 2019) (quoting *Hargroves v. City of New York*, 411 Fed. App'x 378, 382 n.3 (2d Cir. 2011) ("False arrest is a species of false imprisonment, so both claims are subject to the same legal analysis."). "Under New York law, a plaintiff must prove four elements to prevail on either claim: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Campbell v. City of New York*, No. 16-CV-7201 (NGG) (SMG), 2019 WL 569768, at *5 (E.D.N.Y. Feb. 11, 2019) (citing *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018); *Broughton v. New York*, 335 N.E.2d 310, 314 (N.Y. 1975)); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (same).

Probable cause "is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)); *see also Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."); *Papazissis*, 2022 WL 900641, at *3 (citing *Jocks v. Tavernier*, 316 F3d 128, 134 (2d Cir. 2003) ("An arrest is privileged is a defendant possessed probable cause."). "A police officer has probable cause for an arrest when he has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrest has committed or is committing a

crime." *Haskins v. City of New York*, No. 15-CV-2016 (MKB), 2017 WL 3669612, at *5 (E.D.N.Y. Aug. 24, 2017) (quoting *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013)).

"Probable cause is, of course, evaluated on the totality of the circumstances." *Jenkins*, 478 F.3d at 90 (citing *United States v. Patrick*, 899 F.2d 167, 171 (2d Cir. 1990)). In determining whether an arresting officer had probable cause, a court must consider "whether the facts known to the arresting officer, at the time of the arrest, objectively provided probable cause to support the arrest," *id.* (citing *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)), and "must consider only those facts available to the officer at the time of the arrest and immediately before it." *id.* (quoting *Stansbury*, 721 F.3d at 89); *see also Jacobs v. Aiken*, No. 16-CV-1242 (GRB) (JMW), 2021 WL 4443942, at *7 ("For the purpose of determining the lawfulness of an arrest, probable cause encompasses only that information available to the arresting official prior to and including the point of seizure."), *adopted by*, 2021 WL 4443937 (E.D.N.Y. Sept. 28, 2021). Further, "[a] Fourth Amendment claim turns on whether probable cause existed to arrest for any crime, not whether probable cause existed with respect to each individual charge. Accordingly, Defendants prevail if there was probable cause to arrest Plaintiffs for any single offense." *Marcavage v. City of New York*, 689 F.3d 98, 109–10 (2d. Cir. 2012) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–56 (2004); *Jaegly*, 439 F.3d at 154). "Under the collective knowledge doctrine, if one law enforcement officer had probable cause to arrest, cooperating law enforcement officers are deemed to have probable cause as well." *Jackson*, 87 F. Supp. 3d at 404; *see also Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983) ("The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.'").

Defendants do not contest the first three elements of Plaintiffs' false arrest and imprisonment claims, but argue that the Court should dismiss the claims because there was probable cause for each Plaintiff's arrest. (Def's Mem. at 7–11). Specifically, Defendants argue that Nelson Santiago's guilty plea to disorderly conduct conclusively establishes probable cause for his arrest and precludes a finding for Plaintiffs as a matter of law. (Def's Mem. at 8–9). Further Defendants argue that the arresting officers had sufficient reason to believe that the remaining Plaintiffs constructively possessed the heroin and ammunition found in executing the search warrant such that they had probable cause to arrest them. (Def's Mem. at 9–11). Finally, Defendants argue that even if there was not probable cause to arrest the remaining plaintiffs, there was at least arguable probable cause such that the Defendant Officers are entitled to qualified immunity. (Def's Mem. at 30–31). The Court will address each argument in turn.

1. <u>Guilty Plea</u>

First, Defendants argue that Nelson Santiago's guilty plea establishes probable cause for his arrest and establishes a complete defense to the false arrest claim as a matter of law. (Def's Mem. at 8–9). "A § 1983 plaintiff is barred from asserting a false arrest claim if the arrest led to a criminal conviction, since success on such a claim 'would necessarily demonstrate the invalidity' of plaintiff's conviction." *Rivera v. Meyers*, No. 11 CIV. 2064 BMC, 2012 WL 1078187, at *2 (E.D.N.Y. Mar. 30, 2012) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). "This principle also applies when the plaintiff was convicted following a guilty plea." *Id.* (citing *Younger v. City of New York*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007); *see also Tretola v. Cnty. of Nassau*, 14 F. Supp. 3d 58, 68–69 (E.D.N.Y. 2014) ("[A] guilty plea . . . is fatal to a false arrest claim. That is so because such a plea, in essence,

bars the supposedly aggrieved party from alleging the absence of sufficient grounds for his or her arrest.")).

As described above, Nelson Santiago pled guilty to disorderly conduct on May 30, 2018. (*See* N. Santiago Cert. of Disp.). His guilty plea precludes a finding in his favor on the false arrest claims. Accordingly, I respectfully recommend that Your Honor grant Defendant's motion for summary judgment on Nelson Santiago's false arrest and imprisonment claim.

2.  Constructive Possession and Probable Cause to Arrest Remaining Plaintiffs

Next, Defendants argue that the undisputed facts and evidence establish that there was probable cause for the Defendant Officers to believe that Lucia Santiago, Ismael Joel Suren, and Edgar Joel Santiago constructively possessed the contraband found at the Apartment and to arrest each Plaintiff for such constructive possession. (Def's Mem. at 9–11). Specifically, Defendants argue that "based on the totality of the circumstances, it was reasonable for the Defendant Officers to conclude that all four plaintiffs, who appeared to reside at the apartment on February 19, 2018, exercised dominion and control over the closets and dressers in the second bedroom where the heroin and ammunition were recovered and therefore had constructive possession of the contraband." (Def's Mem. at 11).

"Constructive possession may give rise to probable cause for an arrest." *Simon v. City of New York*, No. 18-CV-3400 (BMC), 2019 WL 2579124, at *2 (E.D.N.Y. June 24, 2019) (citing *Jackson*, 87 F. Supp. 3d at 405)). Establishing constructive possession "requires a 'showing that the defendant exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized.'" *Haskins*, 2017 WL 3669612, at *5 (quoting *People v. Manini*, 79 N.Y.2d 561, 569 (1992); citing *United States v. Facen*, 812 F.3d 280, 287 (2d Cir. 2016)). "In cases where contraband is found in

27

a dwelling not in plain view,[7] a court must conduct a fact-specific inquiry to determine whether the facts available to the officer at the time of the arrest support a 'reasonable inference' that the particular individual 'exercised dominion and control over' the area where the contraband was found." *McKnight v. Cortright*, No. 17-CV-3000 (ARR) (VMS), 2018 WL 6727330, at *7 (E.D.N.Y. Dec. 21, 2018) (collecting cases).

a. Constructive Possession by Virtue of Residence at the Apartment

Defendants argue in part that constructive possession is established here since "there is evidence to establish that each plaintiff sufficiently resided in Apartment 3R on February 19, 2018." (Def's Mem. at 10 (citing Def's 56.1 Stmt. ¶¶ 16–20, 26, 30–32, 36)). Courts in this Circuit "disagree as to whether residency at a dwelling is sufficient to establish probable cause to arrest based on constructive possession." *Id.*; *see also Jackson*, 87 F. Supp. 3d at 406 ("The Court recognizes that some courts have suggested that probable cause may not exist based upon residency alone, if the contraband was inside clothing in a common area rather than in plain view. However, other courts have made no such distinction and, thus, have suggested that dominion and control over a common area by a resident is sufficient.") (citations omitted); *see also Simon*, 2019 WL 2579124, at *2 (citing *Brown v. City of New York*, 14-CV-2700, 2015 WL 427942, at *5

---

[7] "[I]n cases where contraband is found in plain view in a dwelling's common area, courts have routinely held that there is probable cause to arrest everyone in the dwelling." *McKnight v. Cortright*, No. 17-CV-3000 (ARR) (VMS), 2018 WL 6727330, at *6 (E.D.N.Y. Dec. 21, 2018) (collecting cases); *see also Jacobs v. Aiken*, No. 16-CV-1242 (GRB) (JMW), 2021 WL 4443942, at *7 (E.D.N.Y. Aug. 31, 2021) (finding probable cause to arrest plaintiffs where the uncontested "plain view existence of" drugs on a common area table inside the apartment was "sufficient to warrant a person of reasonable caution in the belief that the plaintiff had committed or was committing a crime.") (quoting *Swartz*, 704 F.3d at 111), *adopted by*, 2021 WL 4443937 (E.D.N.Y. Sept. 28, 2021). Here, however, the record indicates that the contraband was found behind a closed door (Def's 56.1 Stmt. ¶¶ 9–10, 12), and contains conflicting accounts regarding where the contraband was retrieved. (*see* I Suren & N. Santiago Crim. Compl. (noting that Ward "recovered a quantity of heroin from a closed dresser drawer" and "recovered a quantity of heroin and said ammunition on top of a second dresser in a bedroom where defendants sleep"); E. Joel Suren Depo. Tr. at 45:13–24 (testimony indicating that ammunition was found in the living room); L. Santiago Depo. Tr. at 33:2–34:25) (testimony indicating that ammunition was kept and found in a drawer in the second bedroom closet, and that heroin was found in a separate closet "between some folded clothing")."The conflicting information in the record regarding the location of the [contraband] precludes a determination of constructive possession on a plain view theory." *McKnight*, 2018 WL 6727330, at *6.

(E.D.N.Y. Feb. 2, 2015) ("Occupants of a house who have access to the area in which the contraband is found may have constructive possession of the contraband."); *Murchison-Allman v. City of New York*, No. 14 Civ. 2160 (ALC), 2016 WL 1322445, at *3 (S.D.N.Y. Mar. 31, 2016) ("[P]robable cause to arrest the [plaintiffs for violation of New York City Admin. Code § 10-131(i)(3)] existed when the officers found a box of old ammunition in their apartment."); *Davis v. City of New York*, No. 04-CV-3299 (JFB) (RLM), 2007 WL 755190, at *5 (E.D.N.Y. Feb. 15, 2007) ("[A]s residents of the household and occupants of the bedroom in which contraband was found, there would have been sufficient probable cause to arrest them for constructive possession of the marijuana in plain view that was seized in their bedroom by the officers.").

Some courts in this District acknowledge that "[a]n officer has probable cause to arrest a person when the officer finds contraband in the person's home, as the person may be presumed to constructively possess items within his or her home," but require that the record establish the police knew the arrested individual was a resident at the premises prior to arresting them. *See, e.g.*, *Haskins*, 2017 WL 3669612, at *9; *McKnight*, 2018 WL 6727330, at *7. For example, in *Haskins*, a court in this District found that officers did not have probable cause based solely on plaintiffs' residence at the premises searched where there was "no evidence that, prior to executing the Search Warrant, [the officer] had any information establishing that plaintiff resided at the Apartment, which would have allowed the officers to presume plaintiff's constructive possession of the narcotics in the . . . closet." *Haskins*, 2017 WL 3669612, at *9 (citing *Jenkins v. City of New York*, No. 10 Civ. 4535 (AJN), 2013 WL 870258, at *8 (S.D.N.Y. Mar. 6, 2013); *Davis v. City of New York*, No. 04-CV-3299, 2007 WL 755190, at *5 (E.D.N.Y. Feb. 15, 2007); *People v. Headley*, 533 N.Y.S.2d 562, 563–64 (App. Div. 1988), *aff'd* 74 N.Y.2d 858 (1989)). Similarly, in *McKnight*, the court adopted the "knowledge requirement" and found that plaintiffs' residency in the

apartment did not give rise to probable cause for constructive possession where "there [wa]s no evidence in the record to suggest that the officers knew [plaintiffs] were residents of the apartment." *McKnight*, 2018 WL 6727330, at *7.

Here, as Defendants note, the undisputed facts establish that Lucia Santiago and Edgar Joel Suren were residents of the Apartment on the night the search warrant was executed, and that Ismael Joel Suren stayed there about three nights per week, including the night before the search warrant was executed. (Def's 56.1 Stmt. ¶¶ 16–21, 26, 36; *see also* Am. Compl. ¶¶ 17–22, 25, 30, 34, 42 (allegations indicating that Lucia Santiago and Edgar Joel Suren live at the Apartment)). However, the appropriate question is not whether the Plaintiffs actually resided at the Apartment, but rather whether the police had sufficient knowledge of facts to believe Plaintiffs resided there at the time of the arrest, such that they had probable cause to arrest the Plaintiffs for constructive possession. See *McKnight*, 2018 WL 6727330, at *7 n.10 (finding that, despite undisputed deposition testimony establishing evidence that plaintiff was the "leaseholder at the time the search warrant was executed," residency alone did not give rise to probable cause where officer testified that he did not remember plaintiffs telling him they lived at the apartment, and where the record contained no evidence "to suggest that the officers knew that [plaintiff] was the leaseholder.") (emphasis added). Examining the evidence in the light most favorable to, and drawing all inferences in favor of, plaintiffs, the Court finds that the Defendants have established their initial burden of demonstrating evidence to support a finding of probable cause to arrest Lucia Santiago for constructive possession of the heroin and ammunition based on her residence at the Apartment, but have not done so with respect to Ismael Joel Suren and Edgar Joel Suren.

When Ismael Joel Suren arrived on the scene, he identified himself as Ismael Suren, told the police that the Apartment was his grandmother's house, and indicated that he did not "live" there

but was "staying" there. (Def's 56.1 Stmt. ¶ 21; *see also* I. Joel Suren Depo. Tr. at 24:8–11; 28:14–17). Further, in executing the warrant the police purportedly found mail addressed to Ismael Joel Suren at the Apartment. (Def's 56.1 Stmt. ¶ 20; Mail Invoice). Nevertheless, examining the evidence and drawing all inferences in a light most favorable to the non-movant, Ismael Joel Suren's explicit statement to police that he did not live on the premises presents a genuine issue of material fact exists as to whether police could have reasonably believed that Ismael Joel Suren resided at the Apartment and therefore constructively possessed the contraband found on the premises.

Likewise, Edgar Joel Suren testified that he spoke with the police before they began searching the Apartment, but the substance of that conversation is not apparent from the record provided to the Court. (E. Joel Suren Depo. Tr. at 36:3–13 (noting that there was some discussion before the search began, and a brief discussion about the video game that he was playing, but "other than that, no other conversation"). No statements of undisputed fact propounded by Defendants and no additional evidence in the record establishes that police could have known Edgar Joel Suren resided at the Apartment at the time of the search. Accordingly, Defendants have not established that the police knew Edgar Joel Suren lived at the Apartment such that they had probable cause to arrest him for constructive possession of the contraband found there on that basis alone.

Lucia Santiago testified that she generally did not speak with police officers during the search, aside from requesting that the officers provide her with her blood pressure medication and telling an officer that she knew her son Ismael Suren Jr. used drugs after heroin was discovered in the second bedroom. (L. Santiago Depo. Tr. at 36:1–37:13). Nevertheless, Ismael Joel Suren's statement that the Apartment was his grandmother's house and Lucia Santiago's request for medication from within the Apartment during the search provide sufficient evidence to establish

that the police collectively had probable cause to believe that she resided at the Apartment such that they had probable cause to arrest her for possession for any contraband discovered there.

Accordingly, I respectfully recommend that Your Honor grant Defendants' motion for summary judgment as to Plaintiff Lucia Santiago's false arrest and imprisonment claims.

### b. Other Indicia of Dominion and Control by Ismael Joel and Edgar Joel Suren

Defendants argue that the totality of the circumstances were such that it was reasonable for the Defendant Officers to conclude that Plaintiffs "exercised dominion and control over the closets and dressers in the second bedroom where the heroin and ammunition were recovered and therefore had constructive possession of the contraband." (Def's Mem. at 11).

"Mere proximity or presence is . . . insufficient to support a finding of constructive possession." *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004). When the evidence does not establish that an individual resides at the dwelling where contraband is found, "the probable-cause analysis turns on whether there were circumstances reasonably connecting the individual to the contraband." *McKnight*, 2018 WL 6727330, at *7. "Such circumstances include 'the presence of documents pertaining to the individual in the same location as the contraband,' . . . the discovery of contraband in the individual's bedroom, . . . and the presence of the individual's clothing or belongings in close proximity to the contraband." *McKnight*, 2018 WL 6727330, at *7 (quoting *Haskins*, 2017 WL 3669612, at *5; citing *Davis*, 2007 WL 755190, at *5; *United States v. Gaviria*, 740 F.2d 174, 185 (2d Cir. 1984); *Cruz v. City of New York*, No. 15 CV 7731-LTS-AJP, 2017 WL 3841870, at *2 (S.D.N.Y. Sept. 1, 2017)). Courts also "have declined to find probable cause for constructive possession when the record fails to establish that the individuals were aware of or complicit in the illegal activity. *Id.* at *8 (citing *Haskins*, 2017 WL 3669612, at *6–7, *9; *Jenkins*, 2013 WL 870258, at *8–11). Taking these factors into account, the

circumstances reasonably connect Edgar Joel Suren to the contraband discovered at the Apartment, but do not reasonably connect Ismael Joel Suren to the contraband.

The record indicates that the police recovered the heroin in Lucia Santiago's bedroom, to which Edgar Joel Suren had unrestricted access through an open archway, that it was discovered in the closet where he typically kept his belongings, and that it was found among his folded clothes. (Def's 56.1 Stmt. ¶¶ 4, 6–7; L. Santiago Depo. Tr. at 34:9–25; E. Joel Suren Depo. Tr. at 19:2–9). Although the record does not otherwise establish that Edgar Joel Suren was aware of or complicit in the drug activity, the discovery of heroin among his clothes would "warrant a person of reasonable caution in the belief that" he possessed the drugs such that the police had probable cause to arrest him for constructive possession. *Haskins*, 2017 WL 3669612, at *5. Since the police had probable cause to arrest Edgar Joel Suren for constructive possession of heroin,[8] I respectfully recommend that Your Honor grant Defendants motion for summary judgment with respect to his false arrest and imprisonment claims.

Defendants argue that their discovery of mail addressed to Ismael Joel Suren at the Apartment supports a finding of probable cause to arrest him for constructive possession of the contraband discovered there. (Def's Mem. at 10; *see also* Def's 56.1 Stmt. ¶ 11 (citing Mail Invoice), ¶ 20). However, examining the evidence in the light most favorable to Plaintiffs, the voucher describing the mail recovered at the scene does not establish that Ismael *Joel* Suren is the intended recipient. (Mail Invoice"). Indeed, the mail addressed to "Ismael Suren" may have been intended for his

---

[8] The record is less clear with respect to Edgar Joel Suren's claim with respect to the ammunition charges. Although the record suggests that the ammunition was found in the same bedroom (L. Santiago Depo. Tr. at 33:2–13; *see also* I. Suren & N. Santiago Crim. Compl.), it was found in a different closet and was not found among Edgar Joel Suren's belongings. Further, Edgar Joel Suren's testimony presents a question of fact regarding the location of the ammunition upon its discovery. (E. Joel Suren Depo. Tr. at 45:1–24 (describing discovery of ammunition under the living room sofa, rather than in a bedroom closet). Nevertheless, as Defendants need only establish probable cause to arrest "for any single offense," *Marcavage*, 689 F.3d at 109–10, summary judgment is warranted with respect to Edgar Joel Suren's claim.

father, an undisputed resident of the Apartment. The record also contains conflicting testimony regarding whether Ismael Joel Suren received mail at the Apartment around the time that the warrant was executed. *Compare* N. Santiago Depo Tr. at 49:9–11 (indicating that Ismael Joel Suren did not receive mail at the apartment "at that time."). Further, unlike in the case of Lucia Santiago or Edgar Joel Suren, the contraband was not found in Ismael Joel Suren's bedroom or in close proximity to his personal belongings, and the record contains no evidence demonstrating that Ismael Joel Suren was aware the contraband was in the Apartment before it was discovered.

On Defendants' motion for summary judgment, the Court is obliged to construe such factual ambiguities in Ismael Joel Suren's favor. Examining the evidence in the light most favorable to Plaintiffs, there is sufficient evidence in the record from which a rational jury could find that probable cause to arrest Ismael Joel Suren on a constructive possession theory was lacking, precluding summary judgment in favor of Defendants.

### 3. Qualified Immunity

Defendants argue in the alternative that even if there was no probable cause to arrest the remaining plaintiffs, there was at least "arguable probable cause" such that the Defendant Officers' actions were objectively reasonable and are entitled to qualified immunity. (Def's Mem. at 30–31).

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: '(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" *Thomas*, 2018 WL 4328825, at *11 (citing *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014); *see also Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019) ("The doctrine of qualified immunity protects 'government officials performing discretionary functions' from 'liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1089 (2d Cir. 2021) (quoting *Okin v. Vill. of Cornwall-On-Hudson Police Dep't,* 577 F.3d 415, 433 (2d Cir. 2009)). "'The doctrine of qualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances,' and when their actions could reasonably be seen as lawful." *Myers*, 819 F.3d at 633 (quoting *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995).

"In the context of a false arrest claim, qualified immunity protects an officer if he had arguable probable cause to arrest the plaintiff." *Thomas*, 2018 WL 4328825, at *11 (quoting *Myers v. Patterson*, 819 F.3d 625, 632–33 (2d Cir. 2016)). "Arguable probable cause exists if it was objectively reasonable for the officer to believe that probable cause existed or officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quoting *Myers*, 819 F.3d at 633) (alterations omitted); *see also Hoyos v. City of New York*, 999 F. Supp. 2d 375, 388 (E.D.N.Y. 2013) ("Because the right to be free from false arrest is clearly established, the issue of qualified immunity turns on whether it was objectively reasonable for defendants to believe that probable cause existed."). "An officer lacks arguable probable cause and is not entitled to qualified immunity only where no officer of reasonable competence could have made the same choice in similar circumstances." *Thomas*, 2018 WL 4328825, at *11 (citing *Myers*, 819 F.3d at 633).

Importantly, "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause. The essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed." *Jenkins*, 478 F.3d 87 (citing *Anderson v. Creighton*, 483 U.S. 635, 644 (1987); *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). "If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Id.*

For the reasons discussed above, the undisputed facts and evidence on the record support a finding that a reasonable officer could have believed based on the totality of the circumstances that there was at least arguable probable cause to arrest Nelson Santiago and Lucia Santiago for possession of heroin and ammunition, and to arrest Edgar Joel Suren for possession of heroin. Accordingly, qualified immunity presents alternative grounds to grant Defendants' motion for summary judgment with respect to those claims.

However, as set forth above, given genuine disputes of material fact regarding whether the police were aware that Ismael Joel Suren resided at the Apartment and whether there were sufficient indicia of dominion and control pertaining to Ismael Joel Suren, the record does not establish whether a reasonable officer could have believed, even mistakenly, that there was probable cause to arrest him for constructive possession of the heroin or the ammunition. *See Jenkins*, 478 F.3d at 87–88 (holding officers were not entitled to qualified immunity on false arrest claim where the parties disputed the essential facts underlying the probable cause analysis); *Thomas*, 2018 WL 4328825, at *12 (holding police not entitled to qualified immunity on false arrest claim where, *inter alia*, the record lacked sufficient evidence demonstrating indicia of dominance or control); *Davis*, 2007 WL 755190, at *14–15 (finding that material issues of fact

36

regarding constructive possession of drugs and ammunition preclude summary judgment on the issue of qualified immunity).

Thus, based on the current record and the factual disputes underlying the probable cause issues, I respectfully recommend that Your Honor deny Defendants' motion for summary judgment with respect to Ismael Joel Suren's false arrest and imprisonment claims.

C.   Malicious Prosecution[9]

Plaintiffs assert malicious prosecution claims as to Ismael Joel Suren only. (Am. Compl. ¶¶ 74–76, 119–123). To succeed on a malicious prosecution claim, "a plaintiff must show a violation of his rights under the Fourth Amendment" and must establish the following elements of a malicious prosecution claim under state law: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations and quotations omitted). A federal malicious prosecution claim brought under Section 1983 also requires that the plaintiff "demonstrate a 'sufficient post-arraignment liberty restraint.'" *Kee v. City of New York*, 12 F.4th 150, 162 (2d Cir. 2021) (quoting *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)).[10]

"As with a false arrest claim, the 'existence of probable cause is a complete defense to a claim of malicious prosecution[.]'" *Jean v. Cnty. of Nassau,* No. 14-CV-1322 (JMA) (AYS), 2020 WL 1244786, at *9 (E.D.N.Y. Mar. 16, 2020) (quoting *Manganiello*, 612 F.3d at 161–62)). "Probable

---

[9] As with false arrest and imprisonment claims, the Court considers Plaintiffs' federal and state malicious prosecution claims together, as "[t]he elements of malicious prosecution under New York law are substantially the same." *Tortora v. City of New York*, No. 15-CV-3717 (MKB), 2019 WL 9100369, at *19 (E.D.N.Y. Mar. 30, 2019) (citing *Morris v. Silvestre*, 604 F. App'x 22, 24 (2d Cir. 2015), *aff'd*, 804 F. App'x 35 (2d Cir. 2020).

[10] As discussed below, the record is silent on whether Ismael Joel Suren suffered any post-arraignment restraint of his liberty.

cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Kee*, 12 F.4th at 166 (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)). Although the definition of probable cause in the malicious prosecution context differs from the definition used in the false arrest context, "[w]here there is no change in the information known to police at the time of arrest and prosecution, probable cause sufficient to warrant arrest precludes a claim for malicious prosecution." *Roberts v. City of New York*, No. 16 CIV. 5409 (BMC), 2017 WL 4357291, at *9 (E.D.N.Y. Sept. 29, 2017) (quoting *Cortes v. City of New York*, 148 F. Supp. 3d 248, 255 (E.D.N.Y. 2015), *aff'd sub nom. Roberts v. Azize*, 767 F. App'x 196 (2d Cir. 2019); *see also Jean*, 2020 WL 1244786, at *9 (quoting *McDermott v. City of New York*, No. 94-CV-2145, 1995 WL 347041, at *5 (E.D.N.Y. May 30, 1995) ("In the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie."); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 537 (S.D.N.Y. 2015) (holding that if probable cause existed at the time of arrest, "it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact"). Unlike a false arrest claim, however, "probable cause must be shown as to each crime charged in the underlying criminal action," *Kee*, 12 F.4th at 166 (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003); *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)).

With respect to the malice requirement, "actual malice 'does not require a plaintiff to prove that the defendant was motivated by spite or hatred,' but that he initiated the criminal proceeding 'due to a wrong or improper motive, something other than a desire to see the ends of justice

served.'" *Davis*, 2007 WL 755190, at \*10 (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994)). "Actual malice typically is shown by circumstantial evidence, including lack of probable cause." *Id.* (citing *Martin v. City of Albany*, 42 N.Y.2d 13, 17 (1977); *see also Kee*, 12 F. 4th at 167 n.17 ("To the extent the district court . . . referenced [plaintiff's] failure to proffer evidence of malicious intent, malice may be inferred if [plaintiff] is able to demonstrate a lack of probable cause or . . . the fabrication of evidence."); *Boyd*, 336 F.3d at 78 ("A lack of probable cause generally creates an inference of malice"); *Lowth*, 82 F.3d at 573 ("In most cases, the lack of probable cause-while not dispositive-tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.").

It is undisputed that criminal proceedings were initiated against Ismael Joel Suren (Def's Stmt. ¶ 23; *see also* I. Joel Suren & N. Santiago Crim. Compl.; I. Suren Online Prisoner Arraignment Form) and that he obtained a favorable termination of those proceedings through a dismissal on November 26, 2018. (Def's Stmt. ¶ 24; *see also* I. Joel Suren Cert. of Disp.).[11] Accordingly, Defendants argue that summary judgment is warranted because "the plaintiffs cannot establish that the prosecution lacked probable cause" because "there was probable cause to arrest" each Plaintiff for constructive possession, and because "the record is devoid of any evidence that defendants acted with malice." (Def's Mem. at 13–14). Defendants also argue that "because defendants'

---

[11] Defendants specifically argue that malicious prosecution claims as to Plaintiffs Lucia Santiago, Nelson Santiago, and Edgar Joel Suren's fail as a matter of law under the favorable termination prong, as Nelson Santiago's guilty plea and Lucia Santiago and Edgar Joel Suren's acceptance of an adjournment in contemplation of dismissal preclude a requisite finding of "affirmative indications of innocence." (Def's Mem. at 13–14 (quoting *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018)). However, as the Supreme Court recently clarified "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022); *see also Jessamy v. Jakasal*, No. 21-214, 2022 WL 1669512, at \*2 (2d Cir. May 26, 2022). Nevertheless, since the Amended Complaint asserts a malicious prosecution claim only on behalf of Ismael Joel Suren, and since Defendants' memorandum of law does not contest the favorable termination prong of his claim, the argument is not relevant here.

actions were objectively reasonable, they are entitled to qualified immunity." (Def's Mem. at 30–31).

As discussed above, however, genuine issues of material fact remain with respect to whether the police had probable cause under the circumstances to arrest Ismael Joel Suren for constructive possession of the heroin and ammunition recovered at the Apartment. Further, "where, as here, the issue of probable cause . . . is a question for the jury, the determination of actual malice also cannot be made on summary judgment." *Davis*, 2007 WL 755190, at *10; *see also Naim v. City of New York,* No. 10-CV-912 (FB) (RER), 2012 WL 2923308, at *3 (E.D.N.Y. July 18, 2012) ("Because malice may be proven circumstantially and a jury may infer malice from the absence of probable cause, the malice element is also a question for the jury."); *Daniels v. Gladstone*, No. 16-CV-190 (PKC) (JO), 2019 WL 3502924, at *14 (E.D.N.Y. July 31, 2019) (same). Such issues of material fact also preclude a finding that Defendants are entitled to qualified immunity. *See Thomas*, 2018 WL 4328825, at 12 ("Given the disputed issues of material fact as to the probable cause and arguable probable cause determinations, Defendants are not entitled to qualified immunity as to the false-arrest or malicious-prosecution claims.").

Accordingly, I respectfully recommend that Your Honor deny Defendants' motion for summary judgment with respect to Plaintiff Ismael Joel Suren's malicious prosecution claims.

D. <u>Fabrication of Evidence and Fair Trial Claims</u>

"To establish a fair trial claim based on a fabrication of evidence, a plaintiff must show that 'an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.'" *Haskins*, 2017 WL 3669612, at *11 (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016); citing *Jovanovic v. City of New York*, 486 Fed. App'x 149, 152 (2d

Cir. 2012)). Further, a plaintiff may not "bring a fabricated-evidence claim under § 1983 prior to the favorable termination of his prosecution." *Rodriguez v. City of New York*, No. 16-CV-5861 (NG)(RER), 2022 WL 900613, at *9 (E.D.N.Y. Mar. 28, 2022) (citing *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019).[12]

"Unlike a false arrest or malicious prosecution claim, 'probable cause is not a defense to a claim for a denial of the right to a fair trial' based on the fabrication of evidence.'" *Id.* (quoting *Garnett*, 838 F.3d at 277). Indeed, even where probable cause supported an arrest or prosecution, "a plaintiff can still prevail on a fair trial claim if fabricated evidence causes some 'further deprivation.'" *Rowell v. City of New York,* No. 16-CV-6598 (AJN), 2019 WL 280469, at *2 (S.D.N.Y. Jan. 22, 2019) (quoting *Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017)). To establish fabrication, "[a] plaintiff need only produce some evidence showing that the officer's statement or evidence is false or manipulated." *Haskins*, 2017 WL 3669612, at *11; *see also Garnett*, 838 F.3d at 269–70, 279 (holding that the plaintiff's and the officer's conflicting accounts of the events underlying the charges created an issue of fact as to falsity); *Jocks*, 316 F.3d at 138 (plaintiff's testimony that the information was false was sufficient evidence to create an issue of fact as to falsity).

Further, "[p]roof that a police officer forwarded the fabricated evidence to a prosecutor can be satisfied by direct evidence that the officer gave the evidence to the prosecutor or by other evidence from which it can be inferred that the officer forwarded the fabricated evidence to a prosecutor." *Haskins*, 2017 WL 3669612, at 11; *see also Morse v. Fausto*, 804 F.3d 538, 547 (2d

---

[12] As with his false arrest claim, Nelson Santiago's guilty plea precludes a judgment in his favor on his fair trial claim. (*See* N. Santiago Cert. of Disp.). However, Lucia Santiago, Edgar Joel Suren, and Ismael Joel Suren's fair trial claims do not fail on the favorable termination requirement alone, as their prosecutions ended without conviction. *See Thompson*, 142 S. Ct. at 1341; *see also Rodriguez*, 2022 WL 900613, at *9 (dismissal pursuant to ACD constitutes favorable termination).

Cir. 2015) (holding that it was clear that the fabricated evidence was forwarded to a prosecutor because the prosecutor used the fabricated evidence during a grand jury proceeding); *Higazy v. Templeton*, 505 F.3d 161, 177–78 (2d Cir. 2007) (holding that there was an issue of fact as to whether a police officer forwarded false information to a prosecutor because it appeared that the prosecutor relied on the false information at the plaintiff's bail hearing); *Loftin v. City of New York*, No. 15-CV-5656 (MKB), 2017 WL 3614437, at *9 (E.D.N.Y. Aug. 21, 2017) ("[B]ecause the information provided by the officers was the basis for the charges against Plaintiff, the officers' statements influenced the decision of the District Attorney's Office to charge Plaintiff in the Criminal Complaint.").

A fair trial claim may also survive "even if the underlying criminal charges are dismissed and the fabricated evidence is never presented at trial." *Kee*, 12 F.4th at 168 (citing *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231 (2d Cir. 2020)). However, "'[t]he manufacture of false evidence, in and of itself . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right' if the manufacture of false evidence 'did nothing to precipitate the sequence of events that resulted in a deprivation of' liberty." *Simon*, 2019 WL 2579124, at *5 (quoting *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000)). "Therefore, in order to have a cognizable claim for denial of the right to a fair trial, a plaintiff must establish a causal connection between the fabricated evidence and his deprivation of liberty." *Id.* (citing *Brown v. City of New York*, No. 14-CV-5372 (BMC), 2014 U.S. Dist. LEXIS 181736, at *4 (E.D.N.Y. Dec. 23, 2014)). "A [p]laintiff can establish a depr[i]vation of liberty through the number of court appearances a plaintiff made post-arraignment, constraints such as bail requirements, a period of incarceration or travel restrictions. *Haskins*, 2017 WL 3669612, at *11 (citing *Singer*, 63 F.3d at 117; *Arbuckle v. City of New York*, No. 14 Civ. 10248, 2016 WL 5793741, at *10–11 (S.D.N.Y. Sept. 30, 2016));

*see also Hanson v. New York City,* No. 15-CV-1447 (MKB), 2018 WL 1513632, at *17 (E.D.N.Y. Mar. 27, 2018) ("A plaintiff may sufficiently establish a deprivation of liberty when he or she is detained before arraignment, required to be available to reappear before the state court at any time and therefore limited in his or her travel after being released from custody, and makes at least one post-arraignment appearance before a state court." (citing *Swartz*, 704 F.3d at 112; *Rohman*, 215 F.3d at 216; *Norton v. Town of Islip*, No. 12-CV-4463, 2016 WL 264930, at *4 (E.D.N.Y. Jan. 21, 2016)); *cf. Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010) ("[T]he issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure.").

Plaintiffs allege that Defendants attempted to deprive them of the right to a fair trial by "manufactur[ing] evidence of criminality against the plaintiffs which the prosecutors relied upon to initiate criminal actions against the plaintiffs," and that the conduct described in the Amended Complaint "amounted to fabrication of evidence and denial of right to a fair trial." (Am. Compl. ¶¶ 133–135). Defendants argue Plaintiffs' fair trial claims fail because Plaintiffs have not identified "what evidence is alleged to have been manufactured" and have not sufficiently demonstrated an additional deprivation of liberty beyond the prosecution itself. (Def's Mem. at 15–16).

Although Plaintiffs do not identify the specific paragraphs of the Amended Complaint that purportedly support their fabrication claims, the Amended Complaint does allege that Detective Ward provided "false information to the Court" regarding Ismael Suren Jr.'s involvement "in a gun sale on the subject premises on February 15, 2018 at about 10:30 a.m.," in order to obtain the search warrant that ultimately led to their arrests. (Am. Compl. ¶ 49). Nevertheless, the record contains no evidence to substantiate the allegation, and Plaintiffs have failed to "produce some

43

evidence showing that the officer's statement or evidence is false or manipulated." *Haskins*, 2017 WL 3669612, at *11; *see also Pierre*, 2016 WL 11396816, at *4–5. Besides this alleged falsity, Plaintiffs do not allege with particularity the supposedly fabricated evidence that was relied upon by prosecutors or that would have been presented to a jury. *See, e.g.*, *Abdul-Rahman v. City of New York*, No. 10 CIV. 2778, 2012 WL 1077762, at *12 (E.D.N.Y. Mar. 30, 2012) ("[T]he Court dismisses plaintiff's claim because he has presented only the most conclusory and generalized allegations, failing to specify in what way the statements, information, or testimony were false or even in what material respect the charges against him were false.").

Further, to the extent Plaintiffs allege that police officers in the NYPD regularly fabricate facts to justify searches and commonly plant narcotics on innocent individuals to meet arrest quotas (Am. Compl. ¶¶ 93–96), they do not explicitly allege facts demonstrating that such conduct occurred here, and present no evidence supporting such a claim of planted evidence. *See Gutierrez v. New York*, No. 18-CV-3621 (MKB), 2021 WL 681238, at *18 (E.D.N.Y. Feb. 22, 2021) ("Although plaintiffs can generally rely on their own testimony to demonstrate a genuine dispute of material fact, plaintiff offers no evidence in support of his claims that the evidence was planted, which alone are insufficient to 'withstand summary judgment' for false evidence allegations.") (internal citations omitted); *Apostol v. City of New York*, No. 11-CV-3851, 2014 WL 1271201, at *6 (E.D.N.Y. Mar. 26, 2014) ("Plaintiffs cannot withstand summary judgment by making unsubstantiated, convenient claims—for example, that someone must have planted the marijuana[.]"); *Isaac v. City of New York,* No. 16-CV-4729, 2020 WL 1694300, at *9 (E.D.N.Y. Apr. 6, 2020) ("Plaintiff claims that the testimony of four witnesses and [the] defendant . . . was false, but offers no evidence in support, other than his own testimony."). Finally, Plaintiffs'

44

Amended Complaint contains no allegations regarding any deprivation of liberty suffered on behalf of any Plaintiff following their arraignment.[13]

Accordingly, I respectfully recommend that Your Honor dismiss Plaintiffs' fabrication of evidence and fair trial claims as a matter of law.

E. Property Damage and Denial of Due Process

Separate and apart from their claims for property damage caused by the Defendant Officers' in the course of their search, Plaintiffs allege a Fourteenth Amendment deprivation of property claim arising out of Defendants' alleged theft of "various personal effects and properties from plaintiffs' home" including "vials containing the cremation ashes of their late relative, Miguel Santiago, various video games and the sum of $1,600 in United States currency." (Am. Compl. ¶¶ 125–126).[14] Defendants argue that the claim fails as a matter of law, as Plaintiffs have not proffered evidence to indicate that Defendants seized any property besides the glassine envelopes, ammunition, and mail vouchered by police during the search, have not alleged that the Defendant Officers were acting pursuant to an established state procedure in seizing such additional property, and have not availed themselves of common law causes of action or other available post-deprivation procedures designed to address such unlawful seizures. (Def's Mem. at 22–24).

---

[13] The record further indicates that the deprivation of liberty requirement has not been sufficiently satisfied. The record contains no information with respect to any travel restrictions imposed on Nelson Santiago or Ismael Joel Suren, and contains no information about additional court appearances after they were released on their own recognizance following their arraignment. Further, Lucia Santiago's case appears to have been dismissed immediately following her arraignment (L. Santiago Cert. of Disp.), and she reportedly never returned to court. (L. Santiago Depo. Tr. at 47:3). Edgar Joel Suren had one court appearance following his arraignment, but was not held pre-arraignment and was not subject to any travel restrictions. (E. Joel Suren Depo. Tr. at 66:3–16).

[14] Unlike Plaintiffs' other claims alleging constitutional violations, the "Property Damage and Denial of Due Process" claim is not styled as a one brought pursuant to Section 1983; nevertheless, such claims are properly brought pursuant to Section 1983 and courts generally evaluate them as 1983 claims. *See, e.g.*, *Johnson v. City of New York*, No. 16-CV-2879 (PKC) (LB), 2019 WL 2393716, at *2–3 (E.D.N.Y. June 6, 2019); *Daniels*, 2018 WL 4119191, at *12; *Wahid v. Mogelnicki*, 406 F. Supp. 3d 247 (E.D.N.Y. 2017).

"To sustain a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege that he or she: '(1) had a protected liberty or property interest and (2) was deprived of that interest without due process.'" *Daniels*, 2018 WL 4119191, at *12 (quoting *Johnson v. City of New York*, No. 16-CV-2879 (PKC) (LB), 2018 WL 1175139, at *3 (E.D.N.Y. Mar. 5, 2018)). "Deprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under § 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." *Id.* (quoting *David v. N.Y.P.D. 42nd Precinct Warrant Squad*, No. 02–CV–2581 (DC), 2004 WL 1878777, at *5 (S.D.N.Y. Aug. 23, 2004); citing *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (summary order); *Johnson*, 2018 WL 1175139, at *3).

Here, Plaintiffs have not pleaded or established any facts that would indicate the alleged deprivation was authorized or the result of an established state procedure. Thus, "when a plaintiff brings a procedural due process claim '[b]ased on random unauthorized acts by state employees,' the state satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy." *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)). As Defendants note, New York has adequate post-deprivation remedies that Plaintiffs could have sought to obtain the property that the Defendants allegedly took, such as bringing a state law claim in the Court of Claims. *See Wahid v. Mogelnicki*, 406 F. Supp. 3d 247, 249 (E.D.N.Y. 2017) (citing *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) ("Courts addressing this issue have dismissed federal claims for deprivation of property without due process of law, reasoning that New York has adequate state post-deprivation remedies. That is, a plaintiff may bring a state law claim for negligence, replevin or conversion with the Court of Claims. ").

46

As Plaintiffs have not alleged that they pursued such adequate post-deprivation remedies, their deprivation of property claims fail as a matter of law. *See, e.g.*, *Poole v. Hawkins*, No. 18-CV-443 (MKB), 2021 WL 695119, at *4 (E.D.N.Y. Feb. 23, 2021) ("Plaintiff fails to state a claim because he does not allege facts suggesting that the alleged deprivation of his property occurred pursuant to an established state procedure, and because the state provided him with a meaningful post-deprivation remedy, even though he did not use it."); *Wahid*, 406 F. Supp. at 250 (dismissing deprivation of property claim as a matter of law where Plaintiff pleaded no facts that would indicate the deprivation was the result of an established state procedure and where Plaintiff failed to pursue state post-deprivation remedies); *Harris v. City of New York*, No. 16-CV-1214 (PKC)(JO), 2018 WL 4471631, at *10 (E.D.N.Y. Sept. 18, 2018) (same); *Wilson v. Sessoms-Newton*, No. 14-CV-00106 (PKC), 2017 WL 3575240, at *10 (E.D.N.Y. Aug. 17, 2017) (same).

Accordingly, I respectfully recommend that Your Honor dismiss Plaintiffs' property deprivation claims.

F.  Municipal Liability Under Section 1983

Plaintiffs allege in their Amended Complaint that the City of New York, acting through the NYPD and the Office of the District Attorney of Kings County, had policies, practices, and customs of failing to train, supervise, or discipline its police officers and Assistant District Attorneys. (Am. Compl. ¶¶ 82–84). In particular, Plaintiffs allege that the City fails to train or supervise those employees in conducting investigations, interviewing and assessing the credibility of witnesses and informants, prosecuting innocent persons, using force, seizing, vouchering, and releasing property, conducting reasonable searches, and illegally stopping, frisking, degrading, abusing, and prosecuting racial and ethnic minorities on pretextual purposes. (Am. Compl. ¶¶ 82–84). Plaintiffs cite to a number of separate lawsuits against the City, and argue that those suits

involve similar wrongful conduct from which the Court can infer unconstitutional policies, practices, and customs. (Am. Compl. ¶¶ 85–106). Defendants argue that Plaintiffs have not established any support for their boilerplate, conclusory allegations concerning the City's role in their alleged constitutional violations, and that Plaintiffs failure to conduct any *Monell* discovery precludes a finding of liability. (Def's Mem. at 18-21).

To establish a municipal liability claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Frost*, 980 F.3d at 258 (quoting *Bellamy*, 914 F.3d at 756) ("To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom.")). "A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff and others encountering those subordinates." *Gutierrez*, 2021 WL 681238, at *22 (citations omitted).

While Plaintiffs point to other lawsuits in federal and state court in an attempt to establish city-wide policies or customs of unconstitutional conduct to state a claim, "the mere fact that plaintiffs in other lawsuits have alleged unconstitutional treatment similar to the violations alleged by plaintiff does not mean that the City is liable for these alleged violations." *Demosthene v. City of New York*, No. 18-CV-1358 (ARR) (PK), 2019 WL 181305, at *9 (E.D.N.Y. Jan. 10, 2019); *see*

48

*also Gutierrez*, 2021 WL 681238, at *23–24 (granting summary judgment as to plaintiff's municipal liability claim where plaintiff "asks the Court to infer a current police and practice of unconstitutional conduct on behalf of the City premised on prior misconduct" as outlined in other federal lawsuits but "provides no evidence of a policy or practice to support his allegations in the Complaint."); *Papazissis*, 2022 WL 900641, at *6 ("While the complaint contains a litany of alleged examples of misconduct by NYPD officers, a 'mere allegation' in a pleading cannot create a genuine dispute about a material fact."); *Ameduri v. Vill. of Frankfort*, 10 F. Supp. 3d 320, 341 (N.D.N.Y. 2014) ("The Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims of [unconstitutional conduct] is not probative of the existence of an underlying policy by a municipality[.]"); *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22–23 (2d Cir. 2012) (summary order holding that the "citation to various lawsuits involving . . . claims" of unconstitutional conduct "is not probative of the existence of an underlying policy").

As the record here lacks any evidence concerning a municipal policy beyond Plaintiffs' citations to other lawsuits alleging similar misconduct, I respectfully recommend that Your Honor dismiss Plaintiffs' municipal liability claims.

## II.  Pendent State Law Claims

### A.  Assault and Battery

"Under New York law, civil assault 'is an intentional placing of another person in fear of imminent harmful or offensive contact.'" *Tardif v. City of New York*, 991 F3d 394, 410 (2d Cir. 2021) (quoting *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41 (N.Y. App. Div. 1998)). "[B]attery 'is an intentional wrongful physical contact with another person without consent.'" *Id.* (quoting *Charkhy*, 678 N.Y.S.2d at 41). Assault and battery claims brought against police officers under New York

law are evaluated similarly to excessive force claims brought under Section 1983, and "are judged under the Fourth Amendment's 'objective reasonableness' standard." *Pertusiello v. Cnty. of Suffolk*, No. 16-CV-2931 (SJF) (AYS), 2019 WL 4228485, at *6 (E.D.N.Y. Aug. 19, 2019) (citing *Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012); *Kramer v. City of New York*, 04 Civ. 106, 2004 WL 2429811, at *11 (S.D.N.Y. Nov. 1, 2004)), *adopted by*, 2019 WL 4220926 (Sept. 5, 2019). "Under this standard, the determinative question is whether the officers' actions are 'objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.* (quoting *Spinelli v. City of New York*, 579 F3d 160, 167 (2d Cir. 2009)); *see also Tardif*, 991 F.3d at 410 (quoting *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005) ("To succeed on assault and battery claims in the law enforcement context, a plaintiff must also demonstrate that the defendant officer's conduct 'was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties.'").

"A police officer executing a search warrant is privileged to use reasonable force to effectuate the detention of the occupants of the place to be searched." *Harris v. City of New York*, 62 N.Y.S.3d 411, 413–14 (N.Y. App. Div. 2017) (quoting *Boyd v. City of New York*, 52 N.Y.S.3d 370, 372 (N.Y. App. Div. 2017)). Accordingly, "the use of handcuffs to detain occupants of the target of a search warrant is reasonable when the 'governmental interests outweigh the marginal intrusion.'" *Jackson*, 87 F. Supp. 3d at 401 (quoting *Pina v. City of Hartford*, No. 07-CV-0657 (JCH), 2009 WL 1231986, at *7 (D. Conn. Apr. 29, 2009)). "It is also reasonable for officers to draw their weapons when entering a residence they reasonably believe to be used for drug trafficking and reasonable officers 'to sometimes aim that weapon at an individual until an assessment can be made as to whether the individual poses a threat.'" *Abdul-Rahman*, 2012 WL 1077762, at *8

(quoting *Anderson v. United States*, 107 F. Supp. 2d 191, 199 (E.D.N.Y. 2000)); *see also Green v. City of Mount Vernon,* 96 F. Supp. 3d 263, 296 (S.D.N.Y. 2015) ("Plaintiffs fail to state an excessive force claim arising out of their allegations that the Officers entered the apartment with guns drawn because either the Officers were acting pursuant to a valid warrant for a drug-related search or were relying in good faith on an apparently valid warrant for a drug-related search at the time they entered." (collecting cases)).

When considering claims for excessive force in the use of handcuffs, in particular, courts generally consider "evidence that : [i] the handcuffs were unreasonably tight; [ii] the defendants ignored the arrestee's pleas that the handcuffs were too tight; and [iii] the degree of injury to the wrists.'" *Petrusiello*, 2019 WL 4228485, at *6 (quoting *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)). "There is a consensus among courts in this [C]ircuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Id.* at *7 (quoting *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d, 459, 468 (S.D.N.Y. 2008)).

Plaintiffs allege that "by their conduct . . . defendant officers committed acts of battery against plaintiff which included grabbing him and slamming him on the ground. The use of physical force against plaintiff was willful and unwarranted." (Am. Comp. ¶ 110). Defendants argue that Plaintiffs fail to state a claim, as the Amended Complaint "fail[s] to identify the specific plaintiff who brings these claims," and as "there is not even a single allegation that any defendant punched, kicked, or otherwise struck any of the plaintiffs" on the date of the search. (Def's Mem. at 22). Defendants also argue that judgment as a matter of law is warranted as "there is absolutely no evidence produced during discovery or in the record to support such claims." (*Id.*).

Although Defendants are correct that Plaintiffs fail to specify the individual plaintiff to whom the assault and battery claims apply, and there are no allegations that any Defendant punched, kicked or struck any Plaintiff, the Amended Complaint contains allegations that, construed liberally, lend some support to a use of force claim that could be attributable to all four Plaintiffs. Specifically, Plaintiffs allege that in executing the search warrant, the Defendant Officers entered the Apartment with guns drawn and pointed at Edgar Joel Suren (Am. Compl. ¶¶ 15, 18–19), that the Defendant Officers "grabbed and pulled" Lucia Santiago (Am. Compl. ¶ 19), and that all four Plaintiffs were handcuffed. (Am. Compl. ¶¶ 18–19, 29, 38). However, as explained above, the Defendant Officers were authorized to use reasonable force in executing the drug-related search warrant, including entering the Apartment with guns drawn, detaining the occupants of the Apartment, and using handcuffs to do so. Plaintiffs also fail to allege or establish any injury that resulted from the use of handcuffs, and the record contains no evidence to support an excessive force claim premised on the *de minimis* contact that the Defendant Officers appear to have had with the Plaintiffs in executing the search.

Accordingly, I respectfully recommend that Your Honor dismiss Plaintiffs' assault and battery claims.

B. <u>Intentional and Negligent Infliction of Emotional Distress</u>

Plaintiffs allege that "[t]he defendants engaged in extreme and outrageous conduct, intentionally, negligently and recklessly causing severe emotional distress to plaintiffs," and that "Plaintiffs' emotional distress have damaged their personal and professional life because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the arrest, assault and imprisonment of plaintiffs and the destruction of the remains (ashes) of plaintiffs' relative by the defendants." (Am. Compl. ¶¶ 129–130). Defendants argue that

52

these claims are duplicative of Plaintiffs' "other traditional claims" and should be dismissed because intentional and negligent infliction of emotional distress are claims of last resort that "can only be brought when other theories of tort recovery are unavailable." Def's Mem. at 24–25)

Under New York law, "the standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous,' and difficult to satisfy." *Corrado v. New York Unified Ct Sys.*, 163 F. Supp. 3d 1, 26 (E.D.N.Y. 2016) (quoting *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001); *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993)). "In order to sustain a claim, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* at 26–27 (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *Howell*, 81 N.Y.2d at 121)). A claim of negligent infliction of emotional distress requires a similar showing. *See Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 645–46 (E.D.N.Y. 2013) ("Under New York law, a claim of negligent infliction of emotional distress requires a showing of (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress.").[15] For either claim, "[t]he conduct forming the basis of the claim must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Garrison*

---

[15] A plaintiff asserting a claim for negligent infliction of emotional distress must also "establish liability under one of three theories: (1) a bystander theory, (2) a direct duty theory, or a [(3)] special circumstances theory. *Davis*, 2021 WL 3492307, at *16 (citing *Shukla v. Deloitte Consulting LLP*, No. 19 Civ. 10578, 2020 WL 3181785, at *13 (S.D.N.Y. June 15, 2020)). "Under the bystander theory, a plaintiff must show that '(1) [he or] she [was] threatened with physical harm as a result of defendant's negligence; and (2) consequently [he or] she suffer[ed] emotional injury from witnessing the death or serious bodily injury of a member of her immediate family.'" *Id.* (alterations in original) (quoting *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996)). "Under the direct duty theory, a plaintiff must show that he or she 'suffer[ed] an emotional injury from defendant's breach of a duty which unreasonably endangered [his or] her own physical safety." *Id.* (alterations in original) (quoting *Mortise*, 102 F.3d at 696). "[U]nder the special circumstances theory, a plaintiff may recover where there is "an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious.'" *Id.* (quoting *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)).

53

*v. Toshiba Bus. Solutions (USA), Inc.*, 907 F. Supp. 2d 301, 307 (E.D.N.Y. 2012) (internal quotation marks omitted) (discussing intentional infliction of emotional distress); *see also Davis v. City of New York,* No. 13 CV 6260 (RML), 2021 WL 3492307, at *16 (E.D.N.Y. Aug. 9, 2021) (same).

Further, as Defendants note, claims under either theory may generally "be invoked only as a last resort." *Fraser v. City of New York*, No. 20-CV-5741 (NGG) (RER), 2022 WL 3045524, at *4 (E.D.N.Y. Aug. 1, 2022) (quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014)). Accordingly, courts in this Circuit typically dismiss such claims where they are "duplicative of traditional tort claims" and where "the claim arises out of the same facts that give rise to a traditional tort cause of action." *Id.* at *4–5 (citing *Salmon v. Blesser* 802 F.3d 249, 256– 57 (2d Cir. 2015); *Rubio v. Cnty. of Suffolk*, No. 01-CV-1806 (TCP), 2007 WL 2993830, at *5 (E.D.N.Y. Oct. 9, 2007); *Doe v. Uber Techs., Inc.,* 551 F. Supp. 3d 341, 364 (S.D.N.Y. 2021); *Buoniello v. Ethicon Women's Health & Urology*, No. 19-CV-4021 (DRH) (ARL), 2020 WL 5802276, at *4 (E.D.N.Y. Sept. 29, 2020); *Berrio v. City of N.Y.*, No. 15 Civ. 9570 (ALC), 2017 WL 118024, at *7 (S.D.N.Y. Jan. 10, 2017); *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 327–28 (E.D.N.Y. 2016)); *see also Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 386 (E.D.N.Y. 2021) (dismissing intentional and/or negligent infliction of emotional distress claims premised on same conduct as claims for false arrest and malicious prosecution).

Because Plaintiffs' intentional and negligent infliction of emotional distress causes of action are predicated on the same underlying conduct as their other claims, those causes of action are not the appropriate vehicle for Plaintiffs' allegations. Accordingly, I respectfully recommend that Your Honor dismiss Plaintiffs' intentional and negligent infliction of emotional distress claims.

III.    Claims Against Defendants John and Jane Doe

Though not raised by Defendants, the Court notes that Defendant Officers John and Jane Doe have not appeared in this action, and it appears that Plaintiffs have not attempted to identify those officers. As the Plaintiffs have had sufficient time and opportunity to identify the John and Jane Doe Defendants named in the Amended Complaint, and discovery is closed, I respectfully recommend that Your Honor dismiss all claims against them. *See, e.g.*, *Papazissis*, 2022 WL 900641, at *6 (E.D.N.Y. Mar. 28, 2022) (dismissing John and Jane Doe defendant claims *sua sponte*); *Gutierrez*, 2021 WL 681238, at *24 (same); *Tortora*, 2019 WL 9100369, at *25 (same).

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that Your Honor dismiss the false arrest and imprisonment claims of Plaintiffs Nelson Santiago, Lucia Santiago, and Edgar Joel Suren, and dismiss Plaintiffs' fabrication of evidence and fair trial claims, property damage and denial of due process claims, municipal liability claims, assault and battery claims, and intentional and negligent infliction of emotional distress claims. I further recommend that Your Honor dismiss all claims against the John and Jane Doe Defendants. Finally, I respectfully recommend that Your Honor deny Defendants' motion for summary judgment with respect to Plaintiffs' unreasonable search and seizure claim for undue destruction of property, and Ismael Joel Suren's false arrest, false imprisonment, and malicious prosecution claims.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Kiyo A. Matsumoto within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

/s/ Ramon E. Reyes, Jr.

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: August 8, 2022
Brooklyn, NY

56