UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
ISMAEL JOEL SUREN, LUCIA SANTIAGO,
EDGAR JOEL SUREN AND NELSON SANTIAGO,

                PLAINTIFFS,

        -against-

CITY OF NEW YORK, DETECTIVE ALLAN
WARD, [Shield #520], DETECTIVE
ALEJANDRO VILLALONA [Shield #
101], SERGEANT PETER WONG [Shield
#1824], CAPTAIN BENJAMIN LEE [Tax
# 932887], DETECTIVE DANIEL
MIZVESKY [Shield # 1465],
DETECTIVE SAMUEL PEREZ [Shield #
232], P.O. NICHOLAS KOWATCH
[Shield # 9969], SERGEANT BRIAN
GRIBBIN [Shield # 27248] DETECTIVE
PAUL ORTIZ [Shield # 607], P.O.
KRISTA OWENS [Shield # 16661],
DETECTIVE JOHN SLAVINSKY [Shield #
29093], and JOHN DOE and JANE DOE,


                DEFENDANTS.

--------------------------------X

**MEMORANDUM AND ORDER**

19-cv-2659 (KAM)(RER)

**MATSUMOTO, United States District Judge:**

       On February 6, 2013, Plaintiffs Ismael Joel Suren

("Ismael Joel")[1], Lucia Santiago ("Lucia"), Edgar Joel Suren

---

[1] In order to distinguish Plaintiff Ismael Joel Suren from his father, non-party Ismael Suren, Jr. (whose name appears as "Ismael Suren" in the February 19, 2018 search warrant giving rise to this action), the Court refers to the Plaintiff as "Ismael Joel", but makes no finding that he regularly used his middle name "Joel".

("Edgar"), and Nelson Santiago ("Nelson") (collectively, "Plaintiffs") filed an action against Detective Allan Ward, Detective Alejandro Villalona, Sergeant Peter Wong, Captain Benjamin Lee, Detective Daniel Mizvesky, Detective Samuel Perez, P.O. Nicholas Kowatch, Sergeant Brian Gribbin, Detective Paul Ortiz, P.O. Krista Owens, Detective John Slavinsky, and John and Jane Doe, who are officers of the New York City Police Department ("NYPD") (collectively, the "Officer Defendants") in their official and individual capacities, and the City of New York (with the Officer Defendants, the "Defendants"). (ECF Nos. 1 ("Compl."); 15 ("Am. Compl.").) Plaintiffs bring suit under 42 U.S.C. § 1983, asserting constitutional claims based on unreasonable search and seizure, false arrest and imprisonment, malicious prosecution, and fabrication of evidence and denial of the right to a fair trial with respect to their arrests (Am. Compl. ¶¶ 70-108, 132-136), and asserting a cause of action for property damage and denial of due process with respect to the property seized in the course of the search (Am. Compl. ¶¶ 124-127.) Plaintiffs also assert state law claims of false arrest and imprisonment, malicious prosecution, assault and battery, and intentional and negligent infliction of emotional distress. (Am. Compl. ¶¶ 109-123, 128-131.)

2

Defendants have moved, unopposed, for summary judgment on all of Plaintiffs' claims. (ECF Nos. 46 ("Defs. Mot."); 50 ("Defs. Mem.")). The Plaintiffs were served electronically and by mail with Defendants' moving papers (ECF Nos. 46 Defs. Mot; 50 Defs. Mem; 51, Defs. Letter) but did not file any opposition to the Defendants' motion. Presently before the Court is the Report and Recommendation issued August 8, 2022 ("R&R") by Magistrate Judge Ramon Reyes, recommending that this Court grant Defendants' motion for summary judgment on all of Plaintiffs' claims except as to three: (1) Plaintiff Ismael Joel's false arrest and imprisonment claim; (2) Plaintiff Ismael Joel's malicious prosecution claim; and (3) Plaintiffs' unreasonable search and seizure claim for the destruction of property. Now before the Court are Defendants' timely objections to the R&R. (ECF No. 56, Defendants' Objections ("Defs. Obj.").) Reviewing the R&R *de novo* and the record before the Court,[2] the Court adopts in part and modifies in part the R&R

---

[2] (*See* ECF Nos. 48, Declaration of Inna Shapovalova ("Shapovalova Decl."); 48-1, Exh. A, Search Warrant No. 130/2018 ("Search Warrant"); 48-2, Exh. B., Deposition Excerpts of Plaintiff Ismael Joel Suren ("Ismael Joel Dep."); 48-3 Deposition Excerpts of Nelson Santiago ("Nelson Dep."); 48-4, Deposition Excerpts of Edgar Joel Suren ("Edgar Dep."); 48-5, Exh. E, NYPD Arrest Report for Ismael Joel Suren ("Ismael Joel Arrest Report)"; 48-9, Exh. I, NYPD Property Clerk Invoice for Heroin Recovered ("NYPD Heroin Invoice"); 48-10, Exh. J, NYPD Property Clerk Invoice for Ammunition Recovered; 48-11, Exh. K, Deposition of Lucia Santiago ("Lucia Dep."); 48-12, Exh. L, NYPD Property Clerk Invoice for Mail Recovered ("NYPD Mail Invoice"); 48-13, Exh. M, NYPD Lab Analysis for Heroin ("NYPD Heroin Analysis"); 48-14, Exh. N, NYPD Firearms Analysis; 48-15,

for the reasons below, and accordingly, grants summary judgment to
Defendants on all claims.

## FACTUAL BACKGROUND

The Court assumes the parties' familiarity with the
extensive facts thoroughly recounted in the R&R.  (ECF No. 52, R&R
at 2-8.)  For present purposes, the Court reiterates only the facts
relevant to the Defendants' objections[3], as set forth in the
Defendants' unopposed 56.1 Statement, and with reference to the
Amended Complaint for purposes of context.[4]

---

Exh. O, Online Prisoner Arraignment Form ("Arraignment Form"); 48-16, Exh. P.,
Criminal Complaint for Ismael Joel and Nelson ("Criminal Complaint"); 48-17,
Exh. Q, Ismael Joel Suren's Certificate of Disposition ("Ismael Joel
Certificate"); 56-1; Supplemental Declaration of Inna Shapovalova ("Shapovalova
Supp. Decl."); 56-2, Supplemental Deposition Excerpts of Plaintiff Ismael Joel
Suren ("Ismael Joel Dep."); 56-3, Exh. B, Photograph 1; 56-4, Exh. C, Photograph
2.))

[3] Because two of the Defendants' three objections focus exclusively on alleged
deprivations of Plaintiff Ismael Joel's constitutional rights, the facts
below highlight Ismael Joel's circumstances around the time of the search and
arrest.  The Court notes that Plaintiff Ismael Joel's father, non-party
Ismael (Ismael Suren Jr.), is **not** a plaintiff in the case.

[4] The Court notes that Plaintiffs may not rely on allegations in their
Complaint to raise an issue of fact in opposition to a motion for summary
judgment.  *Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (per curiam)
("Fed. R. Civ. P. 56(e) expressly provides that a plaintiff opposing summary
judgment may not rely on his complaint to defeat the motion.").  Here,
Plaintiffs did not oppose Defendants' summary judgment motion.  Nonetheless,
because the Court must "liberally construe pleadings and briefs submitted by
*pro se* litigants, reading such submissions to raise the strongest arguments
they suggest," the Court recounts certain allegations in the Plaintiffs'
Amended Complaint for purposes of considering as comprehensive a record as
possible for the non-moving Plaintiffs.  *Pierre v. Air Serv Sec.*, No. 14-cv-
5915 (MKB)(ST), 2016 WL 11396816, at *4-5 (E.D.N.Y. July 28, 2016) (quoting
*Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

### A. *The Family and the Apartment*

On or about February 19, 2018, Officer Defendants executed a search warrant for 32 Starr Street, Apartment 3R, Brooklyn, New York (the "Apartment") and on the person of "Ismael Suren" (non-party Ismael).  The search warrant issued by the Honorable Joseph E. Gubbay, of Kings County Criminal Court, determined there was probable cause to search the Apartment for "a firearm, ammunition, narcotics, narcotics paraphernalia, and documents relating to the illegal possession of a firearm, ammunition and narcotics." (ECF No. 48-1, Exh. A, Search Warrant.) The Apartment is a railroad-style unit.  (ECF No. 48-2, Exh. B, Ismael Joel Dep. at 19.)  Upon entry to the Apartment, there is the kitchen on one side and on the other side, the living room with a one-seater sofa, a full sofa along the wall, and a TV stand. (ECF No. 48, Exh. B, Joel Dep. at 19:18-19:19.)  From the living room, a door leads to the first bedroom ("Bedroom 1").  (ECF No. 48-3, Edgar Dep. at 17:22-18:19.)  From Bedroom 1, there is a doorless archway that leads to the second bedroom at the end of the Apartment ("Bedroom 2").  (*Id.*)  To access Bedroom 1, one must walk through the living room, and to access Bedroom 2, one must walk through the living room and Bedroom 1.  (ECF No. 48-2, Exh.

B, Ismael Joel Suren Dep., 46:12- 46:17.)  The Plaintiffs keep the door between the living room and Bedroom 1 open.  (ECF No. 48-4, Exh. D, Edgar Dep. at 17:15-17:17.)  When the living room door is open, all of the rooms are accessible and visible to each another. (ECF Nos. 48-2, Exh. B, Joel Dep. ("So it's like a big, open, like, open view, that you can just walk right through to the next room . . . everything is visible."); 48-3, Exh. D, Edgar Dep. at 17:22-18:19) ("It's just open, and the living room is right on the other side of my room.").)

Plaintiff Lucia owns the Apartment and is the matriarch of the family that includes the other Plaintiffs.  Plaintiff Lucia is the mother of non-party Edgardo, non-party Ismael, and Plaintiff Nelson; in turn, non-party Ismael is the father of Plaintiff Ismael Joel, and non-party Edgardo is the father of Plaintiff Edgar.  (*See* ECF No. 48-2, Exh B., Joel Dep. at 11:15-11:20; 48-3, Exh. C, Edgar Dep. at 13:23-4:1; 48-4, Exh. D, Nelson Dep. at 12:11-12:16.)  At various times, each of the aforementioned family members, including the Plaintiffs, would stay for varying lengths of time with Lucia in the Apartment, including on the night of Officer Defendants' search.  (ECF No. 48-11, Exh. K, Lucia Dep. at 20:02-20:08.)

### B. *The Apartment's Occupants in February 2018*

In February 2018, Lucia's sons, non-party Ismael and Nelson, and her grandchild Edgar, were living with her.  (ECF No. 48-3, Exh. C, Nelson Dep. 19:08-19:11.)  Ismael Joel, Lucia's other grandson and non-party Ismael's son, was also staying on and off with Lucia during this period.  (ECF Nos. 48-2, Exh. B, Joel Dep. at 24:14-24:18; 48-4, Exh. D, Edgar Dep. at 47:03-47:09.)  Edgar stayed in Bedroom 1 (ECF No. 48-4, Exh. D, Edgar Dep. 17:16-18:21) or in Bedroom 2 with Lucia and slept on Lucia's late husband's bed, which was next to her bed (ECF No. 48-11, Exh. K, Lucia Dep. at 18:06-:18:16).[5]  Non-party Ismael slept in Bedroom 1, between the living room and Bedroom 2.  (ECF No. 48-11, Exh. K, Lucia Dep. at 18:19-19:20.)  Nelson also stayed in Bedroom 1 at the time.  (ECF No. 48-3, Exh. C, Nelson Dep. at 18:21-18:23.)  As for their belongings, Edgar shared a closet and dresser with Lucia in Bedroom 2.  (ECF No. 48-4, Exh. D, Edgar Dep. at 19:4-19:15.)  Nelson kept his possessions in dressers and closets in both Bedroom 1 and Bedroom 2.  (ECF No. 48-3, Exh. C,  Nelson Dep. 19:10-20:09.)  It

---

[5] Edgar and Lucia's depositions conflict as to whether Edgar was staying in Bedroom 1 or Bedroom 2, but this fact is not material to the summary judgment determination and the objections.

is not clear from the record where non-party Ismael kept his belongings.

On the night before the search and arrest, February 18, 2018, Ismael Joel slept at the Apartment. (ECF No. 48-2, Exh. B, Ismael Joel Dep. at 24:14-24:18.)  In February 2018, Ismael Joel had been in New York for about six months. (ECF No. 48-2, Exh. B, Joel Dep. 21:18-21:19.)  While he was in New York, Ismael Joel would stay half the week at his girlfriend's home and three days each week at Lucia's home in the Apartment. (*Id*. at 21:24-22:23.) When he did stay at the Apartment, Ismael Joel slept on the sofa in the living room. (*Id*. at 20:14.)  There was a "little space right by the wall" where he would "leave his stuff" near the living room sofa on which he slept. (*Id*. at 19:02-19:07.)

Ismael Joel's girlfriend had a family home that was roughly ten minutes by car and thirty minutes walking from the Apartment. (*Id.* at 22:04-22:08.)  He split his time between his girlfriend's and his grandmother Lucia's apartments in order to give his girlfriend's family space. (*Id.* at 22:14-22:19.)  At the Apartment, he helped take care of errands for Lucia. (*Id.* at 22:19-22:23.)  Ismael Joel noted that the proximity between his girlfriend's and grandmother's apartments made it easy for him to

8

help his grandmother, Lucia, with tasks like taking out the garbage or fixing something. (*Id.* at 22:01-22:21.) Ismael Joel and his uncle Edgardo, who lived nearby, were always ready to assist Lucia. Ismael Joel stated, "whatever that lady needs, we do it." (*Id.* at 22:22-22:24.)

Ismael Joel was receiving mail at Lucia's apartment in February 2018. (ECF Nos. 48-11, Exh. K, Lucia Dep. at 20:9-20-22:01 ("[Ismael Joel] used to get all his little nonsense mail here" prior to the search); 48-3, Exh. C, Nelson Dep. 49:6-49:15 (in response to whether Ismael Joel received mail at the Apartment, in February 2018, Nelson testified, "[a]s far as I know yes."); 48-4, Exh. D, Edgar Dep. 90:17-90:22 (in response to whether Ismael Joel received mail at the Apartment, in February 2018, Edgar testified, "[m]ost likely, yes.").) Lucia stated that all of her children (non-party Edgardo, non-party Ismael, Nelson) were also receiving mail at the Apartment because "they all rent rooms [at the Apartment] and they needed a secure address." (*Id.* at 20:02-20:08.)

## C. *Ismael Joel's Arrest*

The search warrant provided the Officer Defendants with authority to search for contraband at the Apartment and "on the

person of" a man identified as "Ismael Suren . . . if found on the premises, and/or any person found there in." (ECF No. 48-1, Exh. A, Search Warrant.) The signature of the warrant by Judge Gubbay established the existence of probable cause to believe that ammunition and narcotics would be found at the Apartment or "on the person" of Ismael Suren. (*Id.*) That evening, Officer Defendants entered the Apartment pursuant to the search warrant and after searching and finding contraband, including ammunition and what appeared to be heroin, arrested Plaintiffs. (ECF No. 46, Defs. 56.1 ¶¶ 9-10.)

On the day of the search, Ismael Joel was with his uncle Edgardo when they received a call to go to the Apartment because "something [had] happened in the house." (ECF No. 48-2, Exh. B, Ismael Joel Dep. at 24:03-24:11, 28:09-28:17.) Upon arrival, they saw police activity and Ismael Joel was asked by the Officer Defendants whether he lived at the Apartment and he responded, "No, but I stay here, it's my grandmother's house." (*Id*. at 28:12-28:17.)[6] The Officer Defendants asked Ismael Joel for his name and he responded, "Ismael Suren," and the police arrested him.

---

[6] There is nothing in the record before the Court that demonstrates whether the Defendants inquired or Ismael Joel told the Defendants, at the time of the search and arrest, where in the Apartment he slept when he stayed there.

During the search, the Officer Defendants recovered contraband present at the Apartment: six glassines of what appeared to be (and was subsequently tested to be) heroin; six .380 caliber cartridges; one 12-gauge caliber cartridge; one .41 caliber cartridge; nine .25 caliber cartridge; four .38 caliber cartridges; and seventeen .22 caliber cartridges (which subsequently were tested and found to be operable). (ECF No. 49, Defs. 56.1 ¶¶ 9-10; *see also* ECF Nos. 48-13, Exh. M, NYPD Heroin Analysis; 48-14, Exh. N, NYPD Firearms Analysis.)  The Officer Defendants found heroin from "a closed dresser drawer" and heroin and ammunition "on top of a second dresser in a bedroom where [Plaintiffs] sleep." (ECF No. 48-16, Exh. P, Criminal Complaint.) When Lucia was informed that heroin was found among her grandson Edgar's clothes in her bedroom closet, she told the Officer Defendants that she knew her son non-party Ismael used drugs. (ECF Nos. 48-11, Exh. K, Lucia Dep. at 34:10-25, 36:20-37:7; 49, Defs. 56.1 ¶ 37.)  As for the ammunition, the Officer Defendants recovered bullet casings under a sofa in the living room. (ECF No. 48-4, Exh. D, Edgar Dep. at 45:01-45:25.)[7]  Ismael Joel

---

[7] At Edgar's deposition the following exchange occurred: Q. To your understanding, where were those bullets found? A. They found them under a sofa -- it was under a sofa, in a metal casing . . . Q. And they were under a sofa

testified at his deposition that he did not know about the bullet casings, but there is no evidence that he conveyed this information to Officer Defendants prior to his arrest. (ECF No. 48-2, Exh. B, Ismael Joel Dep. at 47:24-48:19.)[8]

In addition to the contraband recovered on February 19, 2018, Officer Defendants found and recovered a piece of mail addressed to "Ismael Suren" and another piece of mail addressed to "Ismael Suren Jr." (ECF Nos. 49, Defs. 56.1 ¶ 11; 48-12, Exh. L, NYPD Mail Invoice.)

### D. *The Apartment During the Search*[9]

Plaintiffs sat on the living room couch while Officer Defendants conducted a search of Bedroom 1 and 2 behind closed doors. (ECF Nos. 48-4, Exh. D, Nelson Dep. at 33:20-34:8, 34:23-36:2; 48-3, Exh. C, Edgar Dep. at 30:14-30:25.) Ismael Joel

---

in the living room? A. Yes. It was a metal plate like one you make cake in. Q. Did you see the officers find the bullets? A. Yes. In the living room, yes, I did. (ECF No. 48-4, Exh. D, Edgar Dep. at 45:01-45:25.)

[8] Ismael Joel testified at his deposition as follows: Q. Okay. And do you know if the officers found anything during the search? A: No. There was nothing like, you know -- well, they -- supposedly, they found -- they found some bullets, but I definitely know that that was my grandfather's stuff, you know . . . Q. So your understanding is that the officers found some bullets that belonged to your grandfather; is that correct? A. Yes. Q. Okay. Do you know where those bullets were kept inside of the apartment? A. No. Honest to God, no. Q. Do you know where it was found? A. No. (ECF No. 48-2, Exh. B, Ismael Joel Dep. at 47:24-48:19.)

[9] Some of the facts about the state of the Apartment during and after Officer Defendants' search are submitted by the Defendants in their objections, which the Court accepts and considers for reasons further explained below.

testified that the Officer Defendants took his grandfather's ashes, but he did not personally see any of them take it. (ECF No. 48-2, Exh. B, Ismael Joel Dep. at 69:07-69:25.) Plaintiffs also allege they have requested that the police return the ashes, but that the NYPD has not done so. (ECF No. 15, Am. Compl. ¶ 50.) Plaintiffs' Amended Complaint also alleges that Lucia lost her rent money in the amount of $1,600, which she had in the Apartment at the time of the search. (*Id.* ¶ 62.)

Ismael Joel further testified that the Officer Defendants "destroy[ed] [the] place" in conducting the search. (ECF No. 48-2, Exh. B, Joel Dep. at 47:01-47:05.) He described that "everything [was] on top of [Lucia's] bed, whatever was from the room" including things that "don't belong on a bed" like an iron that was "probably leaking water." (ECF No. 56-2, Exh. A, Ismael Joel Dep. at 71:02-71:22.) He further testified that "everything was gone" from the drawers, including medicine scattered on the floor, and all of the kitchen cabinet contents were on the table. (*Id.* at 72:13-73:25.) Ismael Joel also described the Apartment's front doorknob being broken. (*Id.* at 74:03-74:06.) The only two photographs produced by Plaintiffs and submitted to the Court by Defendants in their objections show a

large pile of various items on Lucia's bed and a small closet with items falling out.  (ECF Nos. 56, Defs. Obj. at 14-15; 56-3, Exh. B, Photograph 1; 56-4, Exh. C, Photograph 2.)[10]

### E. *After the Arrest*

Ismael Joel and Nelson were detained for a total of two days after their arrests.  (Am. Compl. ¶¶ 54.56.)  They were then brought before a judge and released on their own recognizance. (ECF No. 48-15, Exh. O, Arraignment Form.)  Ismael Joel was charged with possession of ammunition and a controlled substance.  (ECF Nos. 48-2, Exh. B, Ismael Joel Dep. at 21:05-21:07; 48-5, Exh. E, Ismael Joel Arrest Report.)  He had several court appearances, and his charges were ultimately dismissed on November 26, 2018.  (ECF No. 48-17, Exh. Q, Ismael Joel Certificate.)

### PROCEDURAL BACKGROUND

Plaintiffs commenced this action represented by counsel. (ECF Nos. 1, Compl.; 13, Am. Compl.)  In September 2020, Plaintiffs' attorney reported that Plaintiffs had terminated his representation and indicated Plaintiffs' intention to retain

_____

[10] The two photos were not submitted with Defendants' initial moving papers, due to Defendants' misunderstanding about Plaintiffs' destruction of property allegations in their unreasonable search and seizure claims.  (ECF No. 56, Def. Objs. at 13-14.)

substitute counsel.  (ECF No. 34, Request to Withdraw Attorney.) On October 6, 2020, Magistrate Judge Reyes granted the attorney's application to withdraw as Plaintiffs' counsel.  (Minute Entry dated 10/6/2020.)  Plaintiffs thereafter failed to appear by substitute counsel, and by order dated November 30, 2020, Magistrate Judge Reyes directed the Plaintiffs to proceed *pro se* and to comply with a discovery schedule.  (Nov. 30, 2020 Order.) According to the docket, Plaintiffs then failed to appear at subsequent conferences on February 17, 2021 and August 11, 2021 before Magistrate Judge Reyes.  (Minute Entry dated 2/17/2020; Minute Entry dated 8/11/2021.)  Magistrate Judge Reyes noted in the R&R that Plaintiffs did not submit any requests for discovery and conducted no depositions after dismissing their attorney. (ECF No. 52, R&R at 9.)  Plaintiffs attended a settlement conference on August 31, 2021 before the Magistrate Judge, but settlement discussions proved unfruitful.  (Minute Entry dated 08/31/2021.)

On January 10, 2022, Defendants filed their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 46, Defs. Mot.)  Defendants timely served *pro se* Plaintiffs with notice of the motion, a memorandum of law, supporting exhibits, and a 56.1 Statement of undisputed material

15

facts pursuant to Local Civil Rules 56.1 and 56.2.  (ECF Nos. 45–50.)  Despite Magistrate Judge Reyes ordering a briefing schedule for the motion (Oct. 21, 2021 Order), Plaintiffs did not file an opposition or otherwise respond to Defendants' motion, or request additional time to do so.  On April 19, 2022, the Court referred Defendants' motion to Magistrate Judge Reyes for a report and recommendation.  (Apr. 19, 2021 Order.)

In the R&R, the Magistrate Judge recommended that the Court grant summary judgment on all of Plaintiffs' claims against Defendants except for three.  (ECF No. 52, R&R at 3.)  The three claims for which the R&R recommended denial of summary judgment were: (1) Ismael Joel's false arrest and imprisonment claim; (2) Ismael Joel's malicious prosecution claim; and (3) all Plaintiffs' unreasonable search and seizure claim based on the alleged destruction of property.  (*Id*. at 4.)  On August 18, 2022, the Court granted Defendants an extension of time to file objections. (ECF No. 54, Motion for Extension of Time; Aug. 19, 2022 Order.) The Court also provided Plaintiffs an extension of time to file objections to the R&R and a response to Defendants' anticipated objections and submission of supplemental evidence.  (*Id*.)

Plaintiffs did not file any objections.  Defendants have now filed objections to the R&R's recommended denial of the three claims described above.  (ECF No. 56, Defs. Obj.)  Plaintiffs have not responded to the Defendants' objections.

## LEGAL STANDARD

When a party objects to an R&R, the Court must review *de novo* those recommendations in the R&R to which the party objects. *See* Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  Where a party does not object to a portion of the R&R, the Court "'need only satisfy itself that there is no clear error on the face of the record.'" *Galvez v. Aspen Corp.*, 967 F. Supp. 2d 615, 617 (E.D.N.Y. 2013) (quoting *Reyes v. Mantello*, No. 00-cv-8936, 2003 WL 76997, at *1 (S.D.N.Y. Jan. 9, 2003)).  The Court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the Magistrate Judge with instructions."  Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

Here, where the R&R considered a motion for summary judgment, this Court determines whether the movant has demonstrated "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

17

Fed. R. Civ. P. 56(a).  "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'"  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249—50 (internal citations omitted).

On summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact and an entitlement to judgment as a matter of law.  *Rojas*, 660 F.3d at 104.  In reviewing the record submitted by the parties, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The Court must "liberally construe pleadings and briefs submitted by *pro se* litigants reading such submissions to raise the strongest arguments they suggest" but a "*pro se* plaintiff cannot simply rely

on the allegations in his complaint to withstand summary judgment." *Bertin*, 478 F.3d 491 (2d Cir. 2007); *Jeffers v. City of New York*, No. 14-cv-6173, 2018 WL 904230, at *27 (E.D.N.Y. Feb. 13, 2018); *see also Champion*, 76 F.3d 485 (2d Cir. 1996) (per curiam) ("Fed. R. Civ. P. 56(e) expressly provides that a plaintiff opposing summary judgment may not rely on his complaint to defeat the motion.").

## DISCUSSION

Defendants object to the R&R recommending that the Court deny summary judgment as to three of Plaintiffs' claims brought under 42 U.S.C. § 1983: (1) Ismael Joel's false arrest and imprisonment claim; (2) Ismael Joel's malicious prosecution claim; and (3) all Plaintiffs' unreasonable search and seizure premised on an unduly destructive search theory.  For those section 1983 claims, this Court analyzes *de novo* Plaintiffs' claims, including the doctrine of qualified immunity—the individual Officer Defendants' "entitlement not to stand trial under certain circumstances."  *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). For any claimed constitutional violation, the qualified immunity analysis proceeds in two parts.  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged

19

show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015). The second part of the qualified immunity analysis requires the Court to consider "whether [the] right is clearly established"—*i.e.*, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *Zieper v. Metzinger*, 474 F.3d 60, 71 (2d Cir. 2007) ("[T]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.").

This Court may address the two qualified immunity parts in either order. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ([B]ecause qualified immunity is an immunity from suit rather than a mere defense to liability . . . the Court has repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation. (quotation omitted)). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Torcivia v. Suffolk Cnty., New York*, 17 F.4th 342, 367 (2d Cir. 2021) (citing Moore v. Vega, 371 F.3d 110, 114 (2d Cir. 2004)).

The Court has reviewed Magistrate Judge Reyes's thorough and well-reasoned recommendation on Plaintiffs' claims. Magistrate Judge Reyes acknowledged that there is no clear Supreme Court or Second Circuit law under the circumstances Officer Defendants confronted during the search (ECF No. 52, R&R at 28-30), and found certain aspects of the record sufficiently unclear as to preclude summary judgment in its entirety.   This Court in its *de novo* review of the record as a whole, most respectfully reaches a different conclusion from Magistrate Judge Reyes on the claims detailed below and determines that to the extent the facts or law before the Officer Defendants were unclear, those circumstances require the application of qualified immunity.

### A. *Ismael Joel's False Arrest and Imprisonment Claim*

First, as to Plaintiff Ismael Joel's false arrest and imprisonment claim, Defendants contend that they had probable cause for his arrest and if the Court finds otherwise, Officer Defendants are entitled qualified immunity.   "Probable cause is a complete defense to an action for false arrest [and false imprisonment]." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012); *see Hargroves v. City of New York*, 411 Fed. App'x 378, 382 n.3 (2d Cir. 2011) ("False arrest is a species of false

imprisonment, so both claims are subject to the same legal analysis."). An officer has probable cause when he or she has "reasonably trustworthy information as to . . . facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been . . . committed by the person to be arrested." *Id*. at 19. Moreover, through the lens of qualified immunity, a showing that the officer had "arguable probable cause," or that it was "objectively reasonable for the officer to believe that probable cause existed," is sufficient to defeat a false arrest and imprisonment claim. *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015). The existence of probable cause must be determined by reference to the totality of the circumstances known to the Officer Defendants at the time of arrest. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Defendants argue that there was probable cause to arrest Ismael Joel because Officer Defendants reasonably believed that he had constructive possession of the heroin and ammunition found in the Apartment. (ECF No. 50, Defs. Mem. at 5.) Defendants proffer the NYPD Mail Invoice as evidence that Ismael Joel was receiving mail at the Apartment at the time of his arrest. (*Id*. at 6.) Defendants also assert that Officer Defendants observed and seized

mail during the search with the name "Ismael Suren," taken in the context of Ismael Joel (whose full name is Ismael Joel Suren) confirming to the Officer Defendants at the time of the search that he "stayed" at the Apartment, and the accessible nature of all rooms of the Apartment, reasonably led them to believe that Ismael Joel exercised the requisite dominion and control over the entire Apartment, where contraband was recovered, to establish constructive possession of the narcotics and ammunition. (*Id.* at 7.) Officer Defendants argue, at minimum, that it was objectively reasonable for the Officer Defendants to believe that Ismael Joel had constructive possession of the contraband, and thus, they had "arguable probable cause" to arrest him. (*Id.* at 8.)

In particular, under the constructive-possession doctrine, an individual who exercises "dominion and control" over contraband is considered to be in possession of that contraband. *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988) (per curiam). Pursuant to the doctrine, probable cause to arrest exists when the facts available to a police officer at the time of arrest support a "reasonable inference" that an individual "exercised dominion and control over" illegal contraband. *Maryland v. Pringle*, 540 U.S. 366, 372 (2003). It is not "necessary for a

defendant to touch or exercise exclusive control over contraband to possess it." *Rios*, 856 F.2d 496. "What is required is sufficient indicia of dominion and control." *Id.*

The Court finds that in light of "the facts available to the officer at the time of the arrest," Officer Defendants had probable cause to believe Plaintiff Ismael Joel exercised dominion and control over the contraband found in the Apartment. Moreover, the undisputed facts show, at a minimum, arguable probable cause existed to arrest Ismael Joel, based on evidence (detailed further below) from which a reasonable, competent officer could believe that he was in constructive possession of the heroin and ammunition found in the Apartment. *See Ricciuti*, 124 F.3d at 128 (stating that the probable cause inquiry is based on the officer's knowledge at the time rather than on the complainant's subjective intentions); *see Walcyzk v. Rio*, 496 F.3d 139, 156–57 (2d Cir. 2007) (stating generally that probable cause is a somewhat fluid concept that does not require a prima facie showing of criminality).

The record reveals that, at the time of arrest, Officer Defendants reasonably could have believed Ismael Joel had a substantial, long-term connection to the Apartment, where his

father, grandmother, and other relatives stayed or resided.  Ismael Joel confirmed to the police officers that he was staying there when the search warrant was being executed.  (ECF No. 48-2, Exh. B, Ismael Joel Dep. 21:18-21:19.)  Although Ismael Joel apparently slept on the living room couch and kept his belongings near the sofa under which ammunition was found, a reasonable officer could have understood that Ismael Joel's presence at the Apartment was not so clearly limited to the living room or that he did not have dominion or control over the rest of the Apartment, including the openly accessible Bedrooms 1 and 2, where heroin was found in a drawer and heroin and ammunition were found on top of a dresser. (ECF No. 48-16, Exh. P, Criminal Complaint (Officer Defendants "recovered a quantity of heroin from a closed dresser drawer" and "recovered a quantity of heroin and said ammunition on top of a second dresser in a bedroom where Officer Defendants sleep"); 48-11, Exh. K, Lucia Dep. at 33:2-34:25 (testimony indicating that ammunition was kept and found in a drawer in the second bedroom closet and heroin was found in a separate closet "between some folded clothing"); 48-4, Exh. D, Edgar Dep. at 45:13-24 (testimony indicating that ammunition was found in the living room "under a sofa").)

Even if contraband ammunition had not been recovered from the living room, and even if Officer Defendants had realized that Ismael Joel slept in the living room away from the contraband in the bedrooms, there were further indicia of Ismael Joel's dominion and control over the entire Apartment. Ismael Joel was present at the home on the day of the arrest and told the Officer Defendants that he stayed there, the Apartment had an open layout with an open door between the living room and Bedroom 1 and no door between the two bedrooms, and Officer Defendants recovered mail addressed to "Ismael Suren," which a reasonable officer could believe indicated Ismael Joel or his father lived at the Apartment. In particular, as to the mail, the Court finds it "objectively reasonable" that Officer Defendants could have believed the mail was Ismael Joel's rather than his father's mail. Moreover, had Officer Defendants understood Ismael Joel to be sleeping in the living room, Officer Defendants found bullet casings under the living room sofa, and thus could have reasonably believed that Ismael Joel had a close connection to the contraband in the home. (ECF No. 48-4, Exh. D, Edgar Dep. at 45:13-24 (testimony indicating that ammunition was found in the living room "under a sofa").)

Although "[m]ere proximity or presence is . . . insufficient to support a finding of constructive possession," in this case, as described above, there was an objectively reasonable connection between Ismael Joel and the contraband. *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004). A reasonable officer could have believed that Ismael Joel had access to the areas in which the contraband was found and even knowledge that the contraband existed. The Apartment had a railroad-style layout and a living room with an open door that connected to Bedroom 1, and had no door between Bedrooms 1 and 2, seemingly providing any individual who stayed at the home easy access to all of the rooms. Ismael Joel, moreover, was not a simple visitor. The Apartment was his "grandmother's," Ismael Suren was named in the warrant, and a reasonable officer could have understood that Ismael Joel's familial relation with his grandmother and father, who resided in the Apartment, established his access to and within the home. Moreover, because numerous family members resided or stayed in the home and had belongings throughout the Apartment, these observations objectively could have led an officer to form a reasonable belief that some of the contraband belonged to Ismael Joel.

Ismael Joel's situation is similar to cases in the Second Circuit where probable or arguable probable cause has been found, such that qualified immunity is warranted. Courts have found relevant to establishing constructive possession: "the presence of documents pertaining to the [individual] in the same location as the [contraband]" (as there was here), *Haskins v. City of New York*, No. 15-CV-2016 , 2017 WL 3669612, at *5 (E.D.N.Y. Aug. 24, 2017) (citation omitted); the discovery of contraband in the individual's bedroom (as there was here, in the living room where Ismael Joel stayed), *see Davis v. City of New York*, No. 04-CV-3299, 2007 WL 755190, at *5 (E.D.N.Y. Feb. 15, 2007); the presence of the individual's clothing or belongings in close proximity to the contraband (as there was with Ismael Joel's belongings in the living room), *see United States v. Gaviria*, 740 F.2d 174, 185 (2d Cir. 1984); *Cruz*, 2017 WL 3841870, at *2; the individual stayed at the dwelling (as Ismael Joel did here); a small apartment where the contraband was found in a common area, *Caraballo v. City of New York*, 526 Fed. App'x 129, 131 (2d Cir. 2013); and the frequency of time that the individual slept at a residence (in *Facen*, twice a week, and here Ismael Joel slept at the Apartment three days per week), *United States v. Facen*, 812 F.3d 280, 284 (2d Cir. 2016).

Essentially, the question is whether "everything together suggest[ed] that [an individual] was more than just a casual visitor" rather than a "temporary visitor" and could have reasonably been connected to the contraband. *Facen*, 812 F.3d 284 (2d Cir. 2016). And where the case law here is so variable, this Court cannot properly conclude that a reasonable officer would have understood that he lacked probable cause to arrest Ismael Joel. *See Saucier*, 533 U.S. at 202 (requiring qualified immunity unless it is "clear" to a reasonable officer that conduct would be unconstitutional).

In short, it would be *unclear* to a reasonable officer that he should not arrest Ismael Joel based on a "totality of the circumstances" confronting the Officer Defendants on February 19, 2018. *See Illinois*, 462 U.S. 238 (1983). Reviewing the undisputed facts, officers of reasonable competence could at least disagree on whether probable cause existed to arrest Ismael Joel on a theory of constructive possession. Thus, even assuming that Officer Defendants lacked probable cause, this Court cannot say that the unlawfulness of their conduct was apparent in these circumstances. *See Anderson*, 483 U.S. at 640. Accordingly, the Court grants

summary judgment to Defendants on Ismael Joel's false arrest and imprisonment claims.

### B. *Ismael Joel's Malicious Prosecution Claim*

The Court also grants Defendants' motion for summary judgment on Ismael Joel's claim for malicious prosecution. To succeed on a malicious prosecution claim under section 1983 in New York, a plaintiff must show that (1) the defendant commenced or continued a criminal proceeding against him; (2) the proceeding was terminated in the plaintiff's favor; (3) there was no probable cause for the proceeding; and (4) the proceeding was instituted with malice. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *Drummond v. Castro*, 522 F.Supp.2d 667, 677–78 (S.D.N.Y. 2007).

Defendants object to the R&R's recommended denial of summary judgment on Ismael Joel's malicious prosecution claim arguing that Officer Defendants had at least "arguable probable cause" to bring prosecution against Ismael Joel. (*Id.* at 8.) Defendants contend that because the Officer Defendants could reasonably believe Ismael Joel had constructive possession of the contraband, there was also probable cause to prosecute him for the related offenses. (*Id.*) Officer Defendants also assert the recovery of the contraband at the Apartment later proved to be

30

heroin and operable ammunition, and there was no exculpatory evidence discovered between the arrest and the prosecution. (*Id.* at 10-11.) Lastly, Defendants argue there was no evidence of the requisite malice that is needed to demonstrate that Officer Defendants "commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quotation and citation omitted). (*Id.* at 11.) Because there is no dispute as to the first two elements of Ismael Joel's malicious prosecution claim, the questions the Court addresses are whether Officer Defendants had sufficient probable cause to prosecute Ismael Joel for unlawful possession of ammunition and heroin, and whether their prosecution was motivated by malice, specifically, a wrong or improper motive.

It is well established that "[t]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York . . ." *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (alterations, citations, and quotation marks omitted). Probable cause to prosecute exists where there are "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty" of the specific crime charged in

the criminal proceeding. *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir.2003; *D'Angelo v. Kirschner*, 288 Fed. App'x. 724, 726 (2d Cir. 2008); *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999). As discussed above, the Court finds that Officer Defendants had sufficient probable cause to arrest and also prosecute Ismael Joel. *Lowth*, 82 F.3d 571 (2d Cir. 1996). At minimum, Officer Defendants could have reasonably believed that Ismael Joel had constructive possession and thus they had "arguable probable cause" to charge him for possession of the contraband found.

Moreover, Plaintiff Ismael Joel has not come forward with any evidence of malice by Officer Defendants, or other wrong or improper motives for commencing criminal proceedings. *Fulton v. Robinson*, 289 F.3d 188, 198 (2d Cir. 2002) (quoting *Lowth*, 82 F.3d at 572.) (Malice in the context of malicious prosecution "does not connote actual spite or hatred but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"). "A lack of probable cause generally creates an inference of malice." *Boyd*, 336 F.3d at 78 (citation omitted). Moreover, for probable cause to dissipate between arrest

32

and prosecution, "the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Pierre v. City of New York*, 531 F. Supp. 3d 620, 626 (E.D.N.Y. 2021) ("Where probable cause to arrest existed, a plaintiff must show that the defendants learned of some intervening facts undermining probable cause between arrest and initiation of the prosecution, or the claim of malicious prosecution cannot survive.")  Here, there is no evidence that probable cause as to Ismael Joel dissipated.

Although malice may be inferred from a lack of probable cause, *Lowth*, 82 F.3d at 573, as already discussed, there is no question as to whether the Officer Defendants had probable cause, or at minimum, arguable probable cause, to arrest and prosecute Ismael Joel for constructive possession, and so malice may not be inferred on that basis.  There is also no evidence that the Officer Defendants learned of any intervening facts between Ismael Joel's arrest and initiation of prosecution to undermine that probable cause.  In fact, only more evidence (confirming the narcotics and operable ammunition found) came to light.  Actual malice is lacking when a police officer reasonably chooses between conflicting evidence.  *See Mazza v. City of New York*, 1999 WL 1289623, *5-6

33

(E.D.N.Y. Jul 13, 1999).  Plaintiffs have not proffered evidence and the Court has not found any in the record that the Officer Defendants had any personal animus toward Plaintiff or that they were motivated by "improper motive" or "something other than a desire to see the ends of justice served."  *Lowth*, 82 F.3d at 573. Accordingly, the Court grants summary judgment on Ismael Joel's federal malicious prosecution claim.

### C. *Plaintiffs' Destruction of Property Claim*

Third and last, the Court grants summary judgment on Plaintiffs' unreasonable search and seizure claim, premised on an unduly destructive search theory.  In their objections, Officer Defendants acknowledge that they did not submit evidence on summary judgment as to the destruction of the property, because they misconstrued Plaintiffs' Amended Complaint to assert a claim for unreasonable search and seizure only with regards to the validity of Officer Defendants' search warrant and the seizure of the Plaintiffs' relative's ashes.  (ECF No. 56, Defs. Obj. at 12-13.) As a result, Defendants now submit to the Court the "only two photographs produced by [P]laintiffs of the inside of the Apartment after the execution of the search" and a deposition excerpt of Ismael Joel describing the photographs and state of the home after

the search.  (*Id.* at 14; ECF No. 56-1-4, Shapovalova Supp. Decl., Exh. A-C.)  Defendants represent that Plaintiffs produced no other photographs of the alleged property damage during the discovery period.  (*Id.* at 15.)

As an initial matter, the Court questions whether Defendants reasonably did not construe the Amended Complaint to allege that the search was conducted in a manner that destroyed Plaintiffs' property.  Plaintiffs' Amended Complaint expressly alleges that Defendants "[tore] down the apartment, [broke] furniture, kitchen cabinets, bed springs, among other things" and "[destroyed] many properties at the subject premises."  (ECF No. 15, Am. Compl. ¶¶ 39, 50.)[11]  On *de novo* review, the Court, however, will accept and consider Defendants' supplemental evidence in reviewing Defendants' objections.  *See United States v. Raddatz*, 447 U.S. 667675 (*de novo* review of a magistrate judge's Report & Recommendation means that a district court "'give[s] fresh

---

[11] Defendants also addressed the destruction of property issue by raising common law defenses in their initial memorandum of law, in a section entitled, "STATE LAW CLAIMS FOR PROPERTY DAMAGE AND DENIAL OF DUE PROCESS FAIL."  (ECF No. 50, Def. Mem. at 22-24.)  Moreover, as Magistrate Judge Reyes notes in his R&R, Defendants "provide[d] in support of their motion [for summary judgment] . . . some evidence beyond the allegations of the Amended Complaint that property was destroyed in the course of the search," but he ultimately found the evidence insufficient to establish there were no genuine issues of fact regarding Plaintiffs' claim that the search was conducted in an unduly destructive manner.  (ECF Nos. 52, R&R at 22; 48-2, Exh. B, Joel Dep. at 46:23-47:05, 70:21-70:25.)

consideration to those issues to which specific objection has been made'", quoting H.R. Rep. No. 94-1609, at 3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998)(finding the district court had discretion to accept Defendants' explanation and supplemental evidence when Defendants had not adequately construed Plaintiffs' causes of action because "both [28 U.S.C.] § 636(b)(1) ([the Federal Magistrates Act]) and Fed. R. Civ. P. 72(b) explicitly permit the district court to receive additional evidence as part of its review.")

Officer Defendants assert in their objections that Plaintiffs' various depositions and the only two photographs produced by Plaintiffs now conclusively establish that there is no evidence or a genuine dispute of material facts as to whether Officer Defendants conducted an unduly destructive search where "officers wantonly damaged or destroyed property or conducted the search in a manner inconsistent with its professed purpose of finding illicit drugs[.]" *Lewis v. City of Mount Vernon*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997); *Cody v. Mello*, 59 F.3d 13, 16 (2d Cir. 1995). (*Id*. at 15-16.) The Court agrees and acknowledges that Magistrate Judge Reyes was not provided with the supplemental evidence.

As an initial matter, the search warrant that was executed by the Officer Defendants provided probable cause to search within for contraband within the Apartment including but not limited to closets, drawers, cabinets, and under furniture. (ECF No. 48-1, Exh. A, Search Warrant.) "A search is presumptively reasonable when executed pursuant to a warrant. A search warrant issued by a neutral magistrate, upon a finding of probable cause, must be afforded great deference and creates a presumption that the officers executing the warrant acted in an objectively reasonable fashion." *Merriweather v. City of New York*, No. 12-cv-5258, 2015 WL 57399, at *6 (S.D.N.Y. Jan. 5, 2015) (citations omitted); *see also United States v. Murtaugh*, 382 Fed. App'x. 83, 85 (2d Cir. 2010) (citation omitted)). "The scope of a search pursuant to a valid warrant is defined by the warrant's description of the premises and the objects of the search, and by the places in which the officers have probable cause to believe those objects may be found." *United States v. Kyles*, 40 F.3d 519, 523 (2d Cir. 1994) (citing *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). The warrant provided a description of the building in which the Apartment was situated but did not circumscribe the areas to be searched within the Apartment or limit Officer Defendants' search

to any of the rooms, confined spaces, drawers, cabinets, or closets. (ECF No. 48-1, Exh. A, Search Warrant.) Accordingly, Officer Defendants had authority to search the entire Apartment.

While "[e]xcessive or unnecessary destruction of property" in the course of an otherwise valid search "may violate the Fourth Amendment," *United States v. Ramirez*, 523 U.S. 65, 71 (1998), "it is well recognized that 'officers executing search warrants on occasion must damage property in order to perform their duty.'" *Cody v. Mello*, 59 F.3d 13, 16 (2d Cir. 1995)(quotation omitted)). Indeed, "it is settled that some disarray in conducting a search, including the tangential destruction of items that could not contain the object of the search, does not state a claim of constitutional magnitude." *Dockery v. Tucker*, No. 97-cv-3584, 2008 WL 2673307, at *10 (E.D.N.Y. June 26, 2008) (collecting cases). To prevail, Plaintiffs must establish that Officer Defendants acted "unreasonably or maliciously in bringing about the damage." *Cody*, 59 F.3d at 16 ("Mere negligence is not enough.") (citing *Daniels v. Williams*, 474 U.S. 327, 333–34 (1986)); *see also Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 290 (S.D.N.Y. 2015) (requiring "more than ordinary disarray

and damage incident to the execution of the warrant") (citation omitted)).

On the record before Magistrate Judge Reyes, he found that "Plaintiffs have not presented any evidence regarding the destruction of property beyond those allegations described in the Amended Complaint." (ECF No. 52, R&R at 22.)  Where a "plaintiff has not produced any documentary evidence to support his allegations," such as photos of broken property, receipts documenting repairs, or sworn testimony attesting to specific damages, he fails to meet his burden to "set out specific facts showing a genuine issue for trial" and thus cannot survive a summary judgment motion. *Smith v. City of New York*, 04-cv-3286, 2010 WL 3397683, at *13 (S.D.N.Y. Aug. 27, 2010) (quoting Fed. R. Civ. P. 56(e)), *aff'd sub nom. Smith v. Tobon*, 529 Fed. App'x. 36 (2d Cir. 2013); *see also Lewis*, 984 F. Supp. 756 (S.D.N.Y. 1997) ("[P]laintiffs have presented no evidence that the officers wantonly damaged or destroyed property or conducted the search in a manner inconsistent with its professed purpose . . . Rather, the only inference that can be drawn is that the officers conducted a thorough search, as they are permitted to do in executing a warrant.").

Reviewing the only two photographs produced to Defendants by Plaintiffs and the deposition excerpts of Ismael Joel describing the alleged destruction, the Court finds that Plaintiffs have not presented sufficient evidence that Officer Defendants acted in a malicious or unreasonable manner in conducting their search. In the supplemental deposition transcript of Ismael Joel provided by Defendants, Ismael Joel describes "everything on top of the bed, whatever was from the room" including "stuff that don't belong on a bed" on Lucia's bed in Bedroom 1. (ECF No. 56-2, Exh. B, Joel Dep. at 71:03-71:71:23.) Ismael Joel also testified that his family's medicine was thrown everywhere on the floor (*id*. at 72:21-:71:22) and that the front door of the Apartment was broken (*id*. at 74:03-74:06). The Plaintiffs, however, have not produced photographs of these damages. The photographs Plaintiffs produced show belongings (clothing, books, hats) piled and extending out of a drawer (ECF No. 56-3, Exh. B, Photograph 1), and other belongings (shoes, baseball mitt, exercise equipment, clothing, something resembling a computer), all presumably removed from drawers and closets, piled on top of Lucia's bed (ECF No. 56-3, Exh. B, Photograph 2). The photos taken by Plaintiffs do not depict damaged property.

Plaintiff's assertion that it was unreasonable for the Officer Defendants to break the front door and remove items from the drawers and closets in carrying out the search fails, because it is an accepted (if regrettable) fact that at times, "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). Plaintiffs cannot rest solely on their allegations to establish a genuine issue of material fact. *See Rogers v. Cartagena*, No. 10-cv-9285, 2013 WL 1285169, at *6 (S.D.N.Y. Mar. 28, 2013) (granting summary judgment because there was "no record evidence to support" claims of property damage during search); *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 469 n. 5 (S.D.N.Y. 2008) ("As for the fact that the officers emptied dresser drawers during the search, we do not doubt that this resulted in inconvenience to plaintiffs, but the argument that it was a constitutional violation is baseless."); *Pina v. City of Hartford*, No. 07-CV-0657, 2009 WL 1231986, at *8 (D. Conn. Apr. 29, 2009) ("Plaintiffs have put forth no evidence of the destruction of property. [The executing officer] admits that personal property was thrown around during the search . . . but there is no indication that the detectives damaged the plaintiff's

property beyond what was necessary to effectuate a complete search of the apartment.") (internal citation and quotation marks omitted).

Plaintiffs also alleged in their Amended Complaint that in searching the Apartment, Officer Defendants "tore down the apartment, breaking furniture, kitchen cabinets, bed springs, among other things" and "destroy[ed] many properties at the subject premises." (ECF No. 15, Am. Compl. ¶¶ 39, 50.) Most troubling, Plaintiffs allege that the urn containing the ashes of Lucia's husband, Miguel Santiago, was taken but not returned, and that Officer Defendants are responsible for Lucia's missing $1,600. (*Id.* ¶ 62.) None of the Plaintiffs observed officers seizing the ashes seized and there is no mention of Lucia's money in the Plaintiffs' depositions before the Court. (ECF No. 48-2, Exh. B, Joel Dep. 69:22;69:25.) ("They must have took [the urn]. They must have took it. Because nobody in the house is going to get rid of my grandfather.") The Court notes that even if Officer Defendants seized the late Miguel Santiago's urn, believing they needed to test it for heroin, it would be within the authority of their search warrant. (ECF No. 48-1, Exh. A, Search Warrant.) There is no evidence presented by Plaintiffs regarding damages or

loss from the alleged seizures. Plaintiffs cannot "overcome summary judgment by relying on 'mere speculation or conjecture as to the true nature of the facts' because 'conclusory allegations or denials' are insufficient to create a genuine dispute of material fact." *Jones v. Int'l Union of Operating Eng'rs*, 671 Fed. App'x 10, 11 (2d Cir. 2016).

Having concluded there is no genuine dispute of material fact that an unduly destructive search was conducted by the Officer Defendants, the Court need not address whether Defendants would nonetheless be protected by qualified immunity with respect to this claim, as a reasonable officer would not know whether the manner in which the search was conducted at the Apartment on February 19, 2018, given the circumstances and established constitutional law, was clearly unlawful. *Zieper*, 474 F.3d 71. Accordingly, the Court grants summary judgment on Plaintiffs' claim for an unreasonable search and seizure.

**CONCLUSION**

Based on the foregoing reasons, Defendants' objections are sustained, and the R&R is adopted in part and modified in part. The Court adopts Magistrate Judge Reyes's thorough and well-reasoned recommendation that summary judgment be GRANTED on the false arrest and imprisonment claims of Plaintiffs Nelson Santiago, Lucia Santiago, and Edgar Joel Suren and that the following claims be DISMISSED: fabrication of evidence and fair trial claims, property damage and denial of due process claims, municipal liability claims, assault and battery claims, and intentional and negligent infliction of emotional distress claims. The Court also further dismisses all claims against the John and Jane Doe Officer Defendants.

The Court most respectfully modifies Magistrate Judge Reyes's R&R to GRANT summary judgment with respect to (1) Plaintiff Ismael Joel Suren's false arrest and imprisonment claim; (2) Plaintiff Ismael Joel Suren's malicious prosecution claim; and (3) all Plaintiffs' unreasonable search and seizure claim for undue destruction of property. Accordingly, summary judgment is GRANTED as to the entirety of Plaintiffs' claims against Defendants and all claims are hereby dismissed. The Clerk of Court is

respectfully ordered to enter judgment and close the case. Defendants are ordered to serve each Plaintiff with a copy of this Memorandum and Order and the Judgment.

SO ORDERED.

DATED:      September 26, 2022

                      Brooklyn, New York

                                      _____/s/_____

                                      HON. KIYO A. MATSUMOTO

                                      United States District Judge